County of Allegheny, Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

Argued October 9, 1985, before President Judge CRUMLISH, JR. and Judges ROGERS, CRAIG, MACPHAIL, DOYLE, COLINS and PALLADINO.

*Thomas M. Rutter, Jr.,* First Assistant County Solicitor, with him, *Robert L. McTiernan,* Assistant County Solicitor, and *James J. Dodaro,* County Solicitor, for petitioner.

*Donald Minahan,* Chief Deputy Attorney General, for respondent.

OPINION BY JUDGE MACPHAIL, November 22, 1985:

Allegheny County (County) has commenced this declaratory judgment proceeding against the Commonwealth of Pennsylvania (Commonwealth) in our original jurisdiction requesting that we order the Commonwealth to provide all funds necessary for the functioning of all parts of the Commonwealth's unified court system and, specifically, all funds necessary for the functioning of the Court of Common Pleas of Allegheny County (Court). Preliminary objections in the nature of a demurrer have been filed by the Commonwealth and are presently before us for disposition. We will sustain the demurrer.

. County alleges in its petition for review[1] that the County expended in excess of twenty-two million dollars from its budget for personnel, facilities and services necessary for the operation of the Court. Its contention is that this expenditure of funds by the County is inconsistent with the clear language and intent of Article V, Section 1 of the Constitution of Pennsylvania and Sections 103 and 301 of the Judicial Code (Code); 42 Pa. C. S. §§103 and 301, which provide that there shall be a unified court system in Pennsylvania. The County's position, as we understand it, is that there cannot be a unified court system when the counties must fund the county courts[2] in that system.

By virtue of the fact that it does provide the financial support for the Court, the County notes that there has been much litigation to resolve the questions of who determines the number and compensation of employees necessary for the proper functioning of the Court, *see Beckert v. Warren,* 497 Pa. 137, 439 A.2d 638 (1981), who represents court employees for purposes of collective bargaining, *see Ellenbogen v. County of Allegheny,* 479 Pa. 429, 388 A.2d 730 (1978), and who is responsible for determining the level of funding for offices, courtrooms and other accommodations and supporting facilities.

County argues that to the extent that the provisions of the Code impose authority in and responsibility on the County and the County Salary Board for matters related to the Court and its employees, the Code is in violation of Article V, Section 1 of the Constitu-

---

[1] For purposes of ruling on the preliminary objections, we must assume that all factual allegations in the petition for review and all inferences fairly deductible therefrom are correct. *John Doe Corp. A, B, C, D and E v. Pennsylvania Crime Commission,* 84 Pa. Commonwealth Ct. 234, 479 A.2d 655 (1984), *remanded on other grounds,* 507 Pa. 137, 489 A.2d 182 (1985).

[2] Courts of Common Pleas.

tion. In addition, the County claims that the present system of county funding of court operations violates Sections 1 and 26 of Article I of the Constitution of Pennsylvania[3] and the equal protection clause of the Fourteenth Amendment to the Constitution of the United States in that persons who perform identical functions in the various county court systems receive different compensation.

The Commonwealth argues that (1) the County's petition fails to present a justiciable controversy; (2) the relief sought contravenes the separation of powers among the executive, legislative and judicial branches; (3) this Court is without authority to direct the payment of funds in this situation and (4) the constitutional challenges are unfounded.

In *Zemprelli v. Thornburgh,* 47 Pa. Commonwealth Ct. 43, 407 A.2d 102 (1979), this Court adopted the criteria set forth in *Baker v. Carr,* 369 U.S. 186 (1962), for a determination of whether an issue was justiciable. Among the criteria which would render an issue non-justiciable are the following: a textually demonstrable constitutional commitment of the issue to a coordinate governmental branch and impossibility of an appropriate judicial remedy.

Our Supreme Court in *Shapp v. Sloan,* 480 Pa. 449, 391 A.2d 595 (1978), *appeal dismissed sub nom., Thornburgh v. Casey,* 440 U.S. 942 (1979), held that:

---

[3] Section 1 provides:

All men are born equally free and independent, and have certain inherent and indefeasible rights among which are those of enjoying and defending life and property, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

Section 26 provides:

Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any right, nor discriminate against any person in the exercise of any civil right.

It is the General Assembly not the executive branch which has been given the constitutional power to determine what programs will be adopted in our Commonwealth *and how they will be financed.* (Emphasis added.)

480 Pa. at 469, 391 A.2d at 604.

Section 3722 of the Code, 42 Pa. C. S. §3722, provides that:

Except as otherwise provided by statute, each county shall continue to furnish the court of common pleas and community court embracing the county, to the minor judiciary established for the county and to all personnel of the system, including central staff entitled thereto, located within the county all necessary accommodations, goods and services which by law have heretofore been furnished by the county.

Section 2302 of the Code, 42 Pa. C. S. §2302 provides:

Whenever necessary, it shall be the duty of the county officers to appoint or detail such county staff as shall enable the judges of the courts embracing the county to properly transact the business before their respective courts.

It is thus apparent that the legislature has committed the financial underpinning of the county judicial system to the counties and, under the language of our Supreme Court in *Shapp v. Sloan,* we are compelled to hold that it is the legislature and the legislature alone which must ordain a change in that funding if that power was constitutionally committed to the legislature in the first place.

As we have noted, the County's major constitutional challenge is grounded in the premise that a unified judicial system simply cannot exist where the financing of that system on the county level is the responsibility of each individual county. The County,

of course, has a very heavy burden when it undertakes a constitutional challenge. *In Re: Nomination Certificate of Street,* 67 Pa. Commonwealth Ct. 441, 447 A.2d 1052, *aff'd,* 499 Pa. 26, 451 A.2d 427 (1982). Our courts have said that an act is unconstitutional only if it clearly, palpably and plainly violates the Constitution. *Daly v. Hemphill,* 411 Pa. 263, 191 A.2d 835 (1963).

The County's premise is contrary to 200 years of history in the Commonwealth.[4] It is also contrary to our constitutional concept of the separation of powers. While the boundary lines separating the governmental functions among the three branches, judicial, legislative and executive, are not always perceptible, it has always been the law that no branch should exercise the functions exclusively committed to another branch. *Beckert.*

We believe the County misperceives the purpose of the provisions of Article V, Section 1. Prior to the 1968 Constitutional Convention, there was a piecemeal judiciary system in Pennsylvania. The sweeping changes made in 1968[5] were structural. Nothing was mentioned with respect to the financing of the court system. Had it been the intention of the Constitutional Convention to change the then current practice which had existed for nearly 200 years, it could have so ordained; rather, as was the case in previous Constitutions of the Commonwealth, the matter of financing the courts simply was not mentioned presumably because it had always been the law that appropriations and financing were legislative, not judicial func-

---

[4] It must be noted that Section 3722 of the Code speaks in terms of the county *continuing* to provide all necessary accommodations, goods and services *which by law have heretofore been furnished by the county.*

[5] *See* R. Woodside, Pennsylvania Constitutional Law 407, 408 (1985).

tions. *Leahey v. Farrell,* 362 Pa. 52, 66 A.2d 577 (1949).

. It is certainly true that the judicial system could not function without adequate funding but it is also true that adequate funding was required both prior to and subsequent to the amendment to Article V. In other words, the reorganization and unification of the court system could and did occur without affecting any funding change. While the delegates *could* have mandated such a change, they chose not to do so. We cannot judicially infer that the creation of a unified court system necessarily embodies funding of the courts of common pleas by the General Assembly in the absence of something more concrete than a litigant's contention that this must be so.

We conclude that the legislature's power to direct funding of the county court system by the County was unaffected by the amendments to Article V. That conclusion leads us further to conclude that the matter before us is non-justiciable and also disposes of the County's constitutional challenge based upon the provisions of Articles I and V.

We feel compelled to add that while this Court has the authority and the duty to declare legislative enactments unconstitutional where they offend the Constitutions of the Commonwealth or of the United States, we would have no power to fashion a judicial remedy which would require the General Assembly to fund the county court system when that obligation has been imposed upon the counties by the General Assembly. *Commonwealth ex rel. Carroll v. Tate,* 442 Pa. 45, 274 A.2d 193, *cert. denied,* 402 U.S. 974 (1971) is authority for the principle that the judiciary's inherent power to preserve the efficient and expeditious administration of justice gives the courts authority to compel the payment by the local government of those

sums of money which are reasonable and necessary for the county judiciary to function; however, our Supreme Court also was emphatic that the courts do not have unlimited power to compel the local government to pay beyond what is reasonable and necessary. The point of the case applicable to that before us now is that the Supreme Court was careful to preserve the concept of the judiciary as an equal partner with the other branches of government but not superior thereto and that unless the function of the county court system was impaired by inadequate funding, the courts should not and will not intervene. No such issue is present in the instant case.

We finally address the equal protection challenge and dismiss it by noting that (1) the County lacks standing to raise the issue on behalf of employees who are not parties to this action[6] and (2) the payment of different salaries to employees in different counties who may have similar occupational titles has a rational basis for differentiation because the work and duties of an employee in the courts of a metropolitan area would necessarily vary from those of a similar employee in a less populated area.

In conclusion, we are compelled to sustain the Commonwealth's demurrer because there is no justiciable controversy and for the further reason that this Court is without the power to fashion the remedy requested by the County.

ORDER

The preliminary objections of the Commonwealth of Pennsylvania are sustained and the action is dismissed.

Judge BARRY did not participate in this decision.

---

[6] See *Harrisburg School District v. Harrisburg Education Association*, 32 Pa. Commonwealth Ct. 348, 379 A.2d 893 (1977).