515 Pa. 23 (1987)
526 A.2d 769
PENNSYLVANIA LABOR RELATIONS BOARD, Appellant,
v.
AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, DISTRICT COUNCIL 84, AFL-CIO, by its Guardian Ad Litem, Bruno Dellana, Appellee, and County of Allegheny, Appellee.
Supreme Court of Pennsylvania.
Argued May 16, 1986.
Decided May 29, 1987.
*24 James L. Crawford, Pennsylvania Labor Relations Bd., Harrisburg, for appellant.
Thomas H.M. Hough, Dennis R. Biondo, Asst. County Solicitors, James J. Dodaro, County Sol., Pittsburgh, for appellee Allegheny County.
Stuart Davidson, Alaine S. Williams, Philadelphia, Louis B. Kushner, Sandra Kushner, Pittsburgh, for appellee AFSCME.
Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

OPINION
NIX, Chief Justice.
The issue in this appeal is whether the County Commissioners of Allegheny County committed an unfair labor practice by refusing to bargain with the representative of *25 the County's court-appointed employees over the subjects of paid sick leave, paid funeral leave, paid leave for jury duty, and shift differential. The Commonwealth Court, reversing the Pennsylvania Labor Relations Board, concluded that the inclusion of such provisions in a collective bargaining agreement would interfere with the inherent power of the judiciary to hire, supervise and discharge court employees. For the reasons that follow we disagree and therefore reverse.

I.
At a negotiations session convened on September 24, 1980, the American Federation of State, County and Municipal Employees, District Council 84, AFL-CIO (hereinafter "the Union"), as representative of the court-appointed employees of Allegheny County, presented a proposed collective bargaining agreement to the County Commissioners (hereinafter "the County").[1] The proposal included, inter alia, the following provisions:
ARTICLE XII
SICK LEAVE
Section 1
It shall be understood by both employer and employee that sick leave is a benefit earned by service and is available when and if needed, and shall not be a "right of taking" as vacation.
Section 2 Sick Leave Entitlement
A) Employees hired after July 1 shall not be entitled to sick leave in the calendar year in which hired. Employees hired before July 1 shall be entitled to a pro rata paid sick leave in the calendar year in which first employed in accordance with the following schedule:

*26
DATE HIRED SICK LEAVE ENTITLEMENT
 Jan. 1 through end of Feb. 5 days
 March 4 days
 April 3 days
 May 2 days
 June 1 day

B) All other full-t9me[sic] permanent employees actively employed who are not on layoff or on leave of absence shall receive sick leave eligibility credited from January 1 for that calendar year in the amount of ten (10) work days providing the other eligibility requirements are met.
C) An employee who has not completed his probation period is not eligible to use sick leave until he has concluded his probation period.
D) In order to be eligible for sick leave, an employee must have received earnings or earnings and compensable disability credited to thirteen (13) pay periods in the previous year. Any employee who received earnings or earnings and compensable disability credited to six (6) pay periods in the previous year shall be entitled to one-half (½) of the regular sick leave. This eligibility provision shall not apply to employees with less than eighteen (18) months continuous service with the County.
Section 3
All sick days shall be applied on a work day basis; however, no additional time shall be granted for holidays occurring while an employee is on sick leave.
Section 4
Employees shall notify their immediate supervisor as soon as possible that they will be on sick leave.
Section 5
Employees who are on sick leave for more than three (3) consecutive work days shall be required to submit a doctor's certification upon returning to work. A head of a department may require a doctor's certificate after one (1) day's sick leave if the employee has a pattern of sick leave abuse.

*27 Section 6

Sick leave may be accumulated to ta[sic] total of 90 work days.
Section 7
Employees who request in writing prior to December 1 shall be paid up to thirty percent (30%) of their accumulated unused sick leave. This request can only be made once each year in the month of November and payment shall be no later than the first pay day thereafter.
ARTICLE XIII
FUNERAL LEAVE
Section 1
Employees shall be permitted four (4) consecutive work day's absence with pay when a death occurs in his immediately[sic] family, which is limited to father, step-father, mother, step-mother, spouse, mother-in-law, father-in-law, child, step-child, brother, step-brother, sister, step-sister, grandparent and grandchild.
In addition, employees shall be permitted one (1) day's absence with pay to attend the funeral of a brother-in-law or sister-in-law.
* * * * * *
ARTICLE XIX
JURY DUTY
Section 1
County employees who are required to and do serve on jury duty shall be granted leave with pay for the work days they serve on jury duty.
Section 2
Any payment received for jury service shall be deducted from the employee's normal daily County compensation.
* * * * * *

*28 ARTICLE XXV

SHIFT DIFFERENTIAL
Section 1
Employees who are axheduled[sic] to begin work after 11:59 AM or before 4:59 AM, shall be paid thirty-five cents ($.35) per hour for each hour worked on such shift.
The County expressed the view that many of the items, including those quoted above, in the proposal were not within its authority to negotiate and requested the segregation of economic and non-economic terms. The Union chose to submit its proposal for consideration as written and the session was adjourned after ten minutes.
On October 31, 1980, the County's special labor counsel wrote a letter to the Union outlining the County's position with respect to the various provisions of the proposed agreement. The Union responded by filing an unfair labor practice charge with the Pennsylvania Labor Relations Board (hereinafter "the Board") on November 21, 1980. The Board advised the Union that it would not issue a complaint. The Union's exceptions were dismissed and a final order was filed on March 20, 1981.
The Union appealed to the Commonwealth Court,[2] which vacated the Board's order and remanded the record for further proceedings "including an evidentiary hearing at which at least the proposed agreement . . . is admitted into evidence, and an order founded on the full text of the proposed agreement." American Federation of State, County and Municipal Employees, District Council 84, AFL-CIO v. Pennsylvania Labor Relations Board, 62 Pa.Commw. 548, 556, 437 A.2d 468, 472 (1981). The Board thereafter concluded that the County had violated section 1201(a)(1) and (5) of the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, No. 195, art. XII, § 1201(a)(1), (6), *29 as amended, 43 P.S. § 1101.1201(a)(1), (5), (Sup.1986), by refusing to bargain over Articles XII (sick leave), XIII (funeral leave), XIX (jury duty) and XXV (shift differential) of the Union's proposal.
The Union and the County filed cross-appeals in the Commonwealth Court,[3] which reversed the Board's decision as to the County's obligation to bargain over sick leave, funeral leave, jury duty and shift differential and affirmed in all other respects. American Federation of State, County and Municipal Employees, District Counsel 84, AFL-CIO v. Pennsylvania Labor Relations Board, 83 Pa.Commw. 591, 477 A.2d 930 (1984). This Court granted the Board's petition for allowance of appeal.

II.
Our resolution of this matter turns on whether the inclusion of the subject matter of the provisions in question in a collective bargaining agreement governing court-appointed employees would interfere with the inherent right of the judiciary to hire, discharge and supervise its personnel, thereby impairing the independence of the judicial branch of government and the administration of justice. A review of our decisions in this area will be instructive.
The right of public employees to organize and bargain collectively was conferred by the General Assembly in 1970 with the enactment of PERA. To effectuate this right, a concomitant duty to negotiate and bargain with public employees was imposed on public employers. See 43 P.S. §§ 1101.101, 1101.701. Section 601 of PERA provided that "[p]ublic employers may select representatives to act in their interest in any collective bargaining with representatives of public employes." 43 P.S. § 1101.601. Thus it appears that "the Legislature assumed all management interests would participate directly in bargaining unless *30 management expressly chose otherwise." Ellenbogen v. County of Allegheny, 479 Pa. 429, 436 n. 11, 388 A.2d 730, 734 n. 11 (1978).
The legislature amended the County Code in 1976 to provide that the county commissioners would be the exclusive representative of management in collective bargaining with public employees in counties of the third through eighth classes.[4] Section 1620 of the County Code, as amended, provides:
§ 1620. Salaries and Compensation
The salaries and compensation of county officers shall be as now or hereafter fixed by law. The salaries and compensation of all appointed officers and employes who are paid from the county treasury shall be fixed by the salary board created by this act for such purposes: Provided, however, that with respect to representation proceedings before the Pennsylvania Labor Relations Board or collective bargaining negotiations involving any or all employes paid from the county treasury, the board of county commissioners shall have the sole power and responsibility to represent judges of the court of common pleas, the county and all elected or appointed county officers having any employment powers over the affected employes. The exercise of such responsibilities by the county commissioners shall in no way affect the hiring, discharging and supervising rights and obligations with respect to such employes as may be vested in the judges or other county officers.
Act of August 9, 1955, P.L. 323, § 1620, as amended by Act of June 29, 1976, P.L. 460, No. 115, § 1, 16 P.S. § 1620 (Supp.1986).
The impact of this new enactment upon the judiciary was addressed by this Court in a series of decisions in 1978. In Sweet v. Pennsylvania Labor Relations Board, 479 Pa. 449, 388 A.2d 740 (1978), we rejected the contention of the judges of the Court of Common Pleas of Washington County, a county of the fourth class, see 16 P.S. § 210(4) (Supp. *31 1986), that an arrangement in which they were not the managerial representative in representation and collective bargaining proceedings would violate the separation of powers. We found that the amendment of section 1620 "establishes an appropriate separation of functions between the judicial and other branches of government and therefore does not infringe upon the independence of the judiciary." Id., 479 Pa. at 454, 388 A.2d at 743 (footnote omitted). Accord, Board of Judges, Court of Common Pleas of Bucks County, Seventh Judicial District, 479 Pa. 457, 461, 388 A.2d 744, 746 (1978).
In Ellenbogen v. County of Allegheny, supra, this Court not only upheld the constitutionality of amended section 1620 but also extended its exclusive representation principle to judicial districts not governed by the County Code. We identified the salutary effects of the amendment as follows:
We think that the legislative judgment expressed in this amendment to The County Code should apply to all judicial districts. The amendment governing representation of managerial interests promotes several important public interests, including fiscal responsibility. County commissioners are charged with the responsibility of raising revenue and allocating funds among various county services. See The County Code, §§ 1701-1705, 16 P.S. §§ 1601-1705 (1956 and Supp.1977). Thus, the amendment allows county commissioners to make managerial decisions affecting tax dollars. This reflects the legislative judgment that the officials charged with providing revenue for budgets are best able to assess whether employee proposals at the bargaining table are feasible and consistent with the overall administration of county fiscal and governmental affairs.
The Legislature's designation of county commissioners as managerial representative also avoids the potential difficulties of having too many decision-makers, none with full authority to reach an agreement, on the public side of the bargaining table. The amendment thus ensures that the managerial representative will have full *32 authority to reach early agreement. Such a setting, legislatively designed to promote swift and efficient bargaining proceedings, is not only attractive to parties at the bargaining table, but also advances the public interest in settlement of labor disputes.
"The judicial duties of a judge take precedence over all his other activities." Code of Judicial Conduct, Canon 3 (Adopted November, 1973). The Legislature's amendment to The County Code recognizes that judges are too scarce and too essential to the administration of justice to require them to perform the non-adjudicatory function of managerial representative at the bargaining table. The Legislature, aware of the long line of cases subjecting judges performing such a non-judicial function to civil suit, see e.g. Ex Parte Rowland, 104 U.S. [(14 Otto)] 604, 26 L.Ed. 861 (1881) (probate judge also a member of a "court of county commissioners" acting in administrative and not judicial capacity and therefore subject to suit), has thus decided that judges should devote full attention to their judicial responsibilities, rather than to the non-judicial activities of bargaining and defending suits. Further, the amendment avoids difficult questions of the propriety of judges deciding appeals arising from proceedings in which they sat before the Board and at the bargaining table.

Id., 479 Pa. at 436-437, 388 A.2d at 734 (footnote omitted).
We also emphasized that the amendment was not intended to infringe upon the inherent rights of the judiciary:
Most important, the amendment makes clear that by appointing county officials to sit on behalf of judges it in no way detracts from the authority of judges to "hir[e], discharg[e], and supervis[e]" employees comprising the bargaining unit. Thus, the Legislature has advanced the orderly administration of Act 195, see § 101, 43 P.S. § 1101.101, without allowing another branch of government to interfere with judicial authority over court personnel, an essential element of the judicial function.

*33 Id., 479 Pa. at 437, 388 A.2d at 734.
In Commonwealth ex rel. Bradley v. Pennsylvania Labor Relations Board, 479 Pa. 440, 388 A.2d 736 (1978), in rejecting the argument of the judges of Philadelphia County that subjecting wages, hours and other terms and conditions of employment to collective bargaining would interfere with their ability to administer justice, we again expressed confidence that permitting collective bargaining would not impair judicial independence:
As we concluded in Ellenbogen v. County of Allegheny, supra, so long as judges retain authority to select, discharge, and supervise court personnel, the independence of the judiciary remains unimpaired. These crucial areas of judicial authority are not infringed by collective bargaining, which here will resolve matters involving wages and other financial terms of employment. See Act 195, §§ 701 and 702, 43 P.S. §§ 1101.701 and 1101.702; see generally Pennsylvania Labor Relations Board v. State College Area School District, 461 Pa. 494, 337 A.2d 262 (1975). Moreover, should collective bargaining impair the independence of the judicial function, nothing in Act 195 nor our decision in Ellenbogen prohibits courts from taking reasonable, appropriate measures to maintain their independence. See Commonwealth ex rel. Carroll v. Tate, 442 Pa. 45, 274 A.2d 193 (1971); Leahey v. Farrell, 362 Pa. 52, 66 A.2d 577 (1949).

Id., 479 Pa. at 447-448, 388 A.2d 739-740 (footnote omitted).
We were recently called upon to explain the effect of the 1976 amendment to section 1620 in County of Lehigh v. Commonwealth, Pennsylvania Labor Relations Board, 507 Pa. 270, 489 A.2d 1325 (1985). In that case the argument was raised that the amendment limited the scope of collective bargaining to matters within the sole control of the county commissioners. In rejecting that interpretation we explained:
The legislative amendment neither effects the judges' managerial function nor limits the scope of collective *34 bargaining by court-appointed employees. Section 1620 explicitly states that the county commissioners are to "represent the judges of the court of common pleas" in negotiations. We have interpreted that phrase to mean "sit on behalf of judges." Ellenbogen v. County of Allegheny, supra, 479 Pa. at 437, 388 A.2d at 734. The judges are principals in the negotiations participating through the county commissioners. Thus the county commissioners are clearly charged with the responsibility of representing the judges' managerial interests, as well as their own, in contract negotiations with court-appointed employees.
.....
Moreover, section 1620's proviso that "[t]he exercise of such responsibilities by the county commissioners shall in no way affect the hiring, discharging and supervising rights and obligations with respect to such employes as may be vested in the judges or other county officers" does not limit the permissible subject of bargaining to purely financial terms. The proviso merely recognizes that, under PERA, matters affecting the hiring, discharge and supervisory powers of the public employer are not subjects of collective bargaining. See 43 P.S. § 1101.702 (selection and direction of personnel not subject to collective bargaining); 43 P.S. § 1101.706 (employer's right to discharge for cause not impaired). Rather, under the express language of section 701 of PERA, court-appointed employees' "wages, hours and other terms and conditions of employment" are subjects of mandatory bargaining. 43 P.S. § 1101.701 (emphasis added).

Id., 507 Pa. at 277, 489 A.2d at 1328-1329.
As in earlier decisions, we added the caveat that the contractual terms negotiated by the county commissioners must not impinge upon judicial control of hiring, discharge and supervision of court employees. Id., 507 Pa. at 278, 489 A.2d at 1329. We also made clear, however, that this general proposition did not preclude the negotiation of *35 terms which could be construed as impacting upon the judicial power in the abstract so long as the judges were consulted by the county commissioners and approved such terms:
The county commissioners must consult with the judges in order to ascertain the effect such a proposal may have upon the court if the resulting collective bargaining agreement is to pass constitutional muster. If it is determined that there would be no adverse impact there is no reason why the proposal should not be embodied in the collective bargaining agreement. It would be contrary to the public interest to bar such terms on the ground that they may impair the judges' "supervisory" authority in the abstract when the simple solution of prior consultation with the judges themselves is available. In any event, contractual terms which actually impair the independence must be declared void and agreements countenancing such terms would totally defeat the purposes of PERA.
If the rights given to county court employees under PERA are to have any efficacy, those employees must be permitted to bargain with the county commissioners concerning all of PERA's permissible subjects of collective bargaining. Concomitantly, to promote and maintain the efficient administration of justice and the enforceability of their employees' contracts, the judges of the courts of common pleas must have input through the county commissioners.

Id., 507 Pa. at 279, 489 A.2d at 1329-1330.

III.
We turn now to the disputed subjects of the Union's proposed collective bargaining agreement. As stated previously, these are paid sick leave, paid funeral leave, pay for time served on jury duty, and shift differential.
The first three of these subjects share a common element. Each concerns employee entitlement to pay for days not worked. As such, these subjects are purely financial in *36 nature and thus permissible areas of collective bargaining. It remains to be determined, however, whether the Union's proposals, as written, would impact upon the court's right to decide whether or not to permit an employee's absence.
The sick leave proposal, Article XII, makes clear that sick leave is available when needed and "shall not be a `right of taking' as a vacation." Since sick leave may be taken only when an employee is ill, an occurrence which neither the employer nor the employee can control, the court's supervisory power would not be affected. Sections 4 and 5 of Article XII, however, would slightly affect that power. Section 4 provides that the employer is to notify his immediate supervisor as soon as possible that he will be on sick leave. While this procedure is hardly unusual, it is ultimately for the court to determine the appropriate person to be so notified. Similarly, section 5, which specifies when a doctor's certification may be required, establishes a policy which should be made by the court in the first instance. In accordance with the procedure outlined in County of Lehigh, supra, the County may bargain over those provisions only after consultation with the court.
Article XIII, funeral leave, provides that a specified number of days' leave with pay "shall be permitted" and thus deprives the court of its right to determine whether such an absence would interfere with its operation. While the court should permit the use of funeral leave where feasible, the possibility exists that the bereaved employee's absence could adversely impact upon the administration of justice. In such a situation an alternative method of compensation would be appropriate. Thus, while funeral leave is a permissible subject of collective bargaining, the decision as to when and under what circumstances it may be taken must be left to the court. The county commissioners must therefore consult with the court as to this aspect of the funeral leave provision.
Article XIX of the proposed agreement, jury duty, provides that employees will receive compensation for the time they are required to serve on jury duty, any payment *37 received for such service being deducted from their pay. This is an entirely appropriate policy which in no way infringes upon the court's authority.
The Union's shift differential proposal, Article XXV, would merely provide for additional compensation for time worked during less desirable shifts. This is a purely financial provision which in no way impacts upon the court's supervisory power. The court would remain free to determine what shifts its employees will work. Moreover, the shift differential would, in fact, enhance the court's supervisory function by increasing employee willingness to work evening and night hours.
To summarize, all of the four subjects covered by the above contract provisions are permissible areas of collective bargaining. The sick leave and funeral leave provisions of the proposed agreement, however, contain language which would appear to impact upon the court's supervisory authority and require prior consultation with the judges of that court.[5] The jury duty and shift differential provisions are innocuous and open to negotiation.
It is clear that there was no justification for the County Commissioners to maintain a position which resulted in an absolute refusal to bargain as to these issues. They had not only the power but the obligation to do so. Therefore, the Board finding that their refusal to bargain over these subjects was an unfair labor practice was correct.
Accordingly, the order of the Commonwealth Court is reversed and the final order of the Board is reinstated.[6]
ZAPPALA, J., files a concurring and dissenting opinion.
*38 ZAPPALA, Justice, concurring and dissenting.
I agree with the majority that the shift differential proposal is a financial provision which may be the subject of collective bargaining. I must dissent, however, from the majority's conclusion that the matters of sick leave, funeral leave, and jury duty are subjects which are properly included in the collective bargaining process. I would hold that the provisions, excluding shift differential, are terms which affect the judiciary's authority to supervise court personnel and that the County Commissioners lack the authority to bargain such terms. See, County of Lehigh v. Commonwealth, Pennsylvania Labor Relations Board, 507 Pa. 270, 489 A.2d 1325 (1985) (Zappala, J., dissenting opinion). I agree with the Commonwealth Court's conclusion that the PLRB erred in determining that the county had violated the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, as amended, 43 P.S. § 1101.1201(a)(1) and (5) insofar as those matters are concerned. As the Commonwealth Court stated,
It is apparent that the proposals concerning these topics would affect the judges' power of decision as to when an employee will be working, or released or excused from performing his or her services for the court. This would curtail a judge's supervisory power over the court personnel's daily performance.
American Federation of State, County and Municipal Employees, et al. v. Commonwealth, Pennsylvania Labor Relations Board, 83 Pa.Commw. 591, 596, 477 A.2d 930, 932 (1984).
While the majority concludes that the commissioners have the authority to bargain as to the proposed contract provisions, it emasculates their authority by requiring prior consultation with the judges. It is apparent that this requirement stems from the majority's concern that the sick leave and funeral leave provisions may infringe upon the *39 judiciary's inherent authority to supervise court personnel. The imposition of such a requirement reinforces my opinion that the matters are not bargainable. It does little more than to create the possibility of a conflict between the commissioners and members of the judiciary. If the commissioners are permitted to be the bargaining representatives as to these matters, then their authority should not be fettered with such a requirement.
NOTES
[1] The proposed agreement concerned only court-appointed employees. We express no view herein as to the permissible scope of bargaining with respect to "court-related" employees, i.e., those appointed and supervised by county row officers.
[2] The Union initially filed a Petition for Review in the Court of Common Pleas of Allegheny County and an Application for Extraordinary Relief in this Court. On May 19, 1981, we granted the Union's Application and transferred the Petition for Review to the Commonwealth Court.
[3] As was the case in the previous Commonwealth Court appeal, these appeals were initially filed in the Court of Common Pleas of Allegheny County. By order dated April 4, 1983, this Court granted the Union's Application for Extraordinary Relief and transferred the matter to the Commonwealth Court.
[4] See 16 P.S. § 102 (1956 & Supp.1986).
[5] We are aware of no authority which supports the proposition, implicit in Mr. Justice Zappala's concurring and dissenting opinion, that a bargaining representative must have absolute discretion in the bargaining process.
[6] The County argues in its brief that this matter is moot because the Allegheny County Court Employees Union is now the exclusive representative of the court employees and thus the County cannot be ordered to bargain with AFSCME. We reject this contention. The Board found that the County had committed unfair labor practices and issued a remedial cease-and-desist order to prevent future violations. The Board's order is sufficiently broad as to require the county to bargain with the new union.