**WASHINGTON COUNTY, Petitioner**

v.

**PENNSYLVANIA LABOR
RELATIONS BOARD,
Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 15, 2013.
Decided July 18, 2013.
Reargument Denied Sept. 13, 2013.

Christopher P. Gabriel, Pittsburgh, for petitioner.

Warren R. Mowery, Jr., Harrisburg, for respondent.

Amy L. Rosenberger, Philadelphia, for intervenor Washington County Association of Professional Employees.

BEFORE: McGINLEY, Judge, McCULLOUGH, Judge and FRIEDMAN, Senior Judge.

OPINION BY Senior Judge FRIEDMAN.

Washington County (County) petitions for review of the June 19, 2012, final order of the Pennsylvania Labor Relations Board (PLRB) dismissing the exceptions filed by County to the proposed decision and order of the hearing examiner and concluding that County committed unfair labor practices in violation of section 1201(a) of the Public Employe Relations Act (PERA).[1] We affirm.

The Washington Court Association of Professional Employees, affiliated with the American Federation of State, County and Municipal Employees District Council 84 (Union), represents court-appointed juvenile and adult probation officers employed by County. County and Union were parties to a 2002–03 collective bargaining agreement (Agreement). Article VII of the Agreement, titled "HOURS OF WORK AND MEAL PERIODS," provided that "[t]he work shift shall consist of

---

1. Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. § 1101.1201(a). Section 1201(a) of PERA provides, in pertinent part:

    (a) Public employers, their agents or representatives are prohibited from:

      (1) Interfering, restraining or coercing employes in the exercise of the rights guaranteed in Article IV of this act.

\* \* \*

    (5) Refusing to bargain collectively in good faith with an employe representative which is the exclusive representative of employes in an appropriate unit, including but not limited to the discussing of grievances with the exclusive representative.

43 P.S. § 1101.1201(a).

seven-and-one-half (7.5) work hours within a workday of Juvenile and Adult Probation Officers." (Findings of Fact, No. 4.)

County and Union could not reach a successor agreement and proceeded to interest arbitration in accordance with section 805 of PERA.[2] The arbitration panel issued an award (Miles Award) effective January 1, 2004, through December 31, 2006. The Miles Award changed the language in Article VII of the Agreement to provide that "[t]he work shift shall consist of eight (8) work hours within a work day of Juvenile and Adult probation officers." (Findings of Fact, No. 4.)

The President Judge of the Washington County Court of Common Pleas (Court of Common Pleas) notified the County Commissioners that he refused to implement the shift provision of the Miles Award. On May 3, 2004, County petitioned the Court of Common Pleas to vacate the Miles Award. (Findings of Fact, No. 5.) On April 19, 2007, Senior Judge Millin issued an order granting County's petition to vacate the Miles Award with respect to the extension of the paid work shift. (Findings of Fact, No. 6.) Union appealed to this court.

In the meantime, County and Union still could not reach a successor agreement to the Miles Award and proceeded to arbitration. On September 24, 2007, an interest arbitration panel issued an award (Petersen I Award), which was retroactively effective from January 1, 2007, through December 31, 2009. The Petersen I Award granted a one-time bonus of $1,200 and an additional one percent wage increase to Union members employed as of May 3, 2004, the date County filed its petition to vacate the Miles Award. The Petersen I Award did not address the additional one-half hour workday extension ordered in the Miles Award. (Findings of Fact, Nos. 8–9.)

On May 14, 2008, this court issued an order reversing Judge Millin's decision and reinstating the provisions of the Miles Award, increasing the paid workday from seven-and-one-half to eight hours. *Washington County v. Washington Court Association of Professional Employees*, 948 A.2d 271, 278 (Pa.Cmwlth.2008). On April 8, 2010, the Supreme Court denied County's petition for allowance of appeal. *Washington County v. Washington Court Association of Professional Employees*, 606 Pa. 652, 992 A.2d 890 (2010). On April 12, 2010, the President Judge of the Court of Common Pleas changed the workday for adult and juvenile probation officers from seven-and-one-half hours of paid work time to eight hours of paid work time. (Findings of Fact, No. 12.)

On August 5, 2010, Union filed a charge of unfair labor practices with the PLRB, alleging that County violated section 1201(a)(1) and (5) of PERA by refusing to retroactively implement the provision of the Miles Award that extended the paid work shift by one-half hour.

County and Union were again unable to reach a successor agreement. On August 12, 2010, an interest arbitration panel issued an award (Petersen II Award). The Petersen II Award did not address the one-half hour workday addition. (Findings of Fact, No. 13.)

On February 9, 2011, the hearing examiner held a hearing on the charge of unfair labor practices. In his proposed decision and order of February 16, 2012, the hearing examiner concluded that Union filed its charge of unfair labor practices within four months of when the Miles Award became enforceable and, thus, the filing was timely under section 1505 of PERA, 43 P.S.

**2.** 43 P.S. § 1101.805.

§ 1101.1505. The hearing examiner also concluded that County was properly named as the respondent in the charge and was liable for the unfair labor practice. Further, County was not entitled to an offset from the backpay due to the employees as a result of the intervening Petersen Awards.

■ County filed exceptions with the PLRB arguing that Union's charge of unfair labor practices was not timely filed. County maintained that the statute of limitations for Union's charge of unfair labor practices, alleging noncompliance with the Miles Award, commenced with the issuance of the award in 2004 and expired four months later, while County's appeal of the award was pending in the Court of Common Pleas. Additionally, County argued that the hearing examiner erred in ordering County to pay back wages and in finding that by pursuing appeals of the Miles Award on behalf of the Court of Common Pleas, County assumed responsibility for refusing to implement the Miles Award. The PLRB dismissed the exceptions and ordered the hearing examiner's proposed decision and order absolute and final. This appeal followed.[3]

■ Initially, County argues that the PLRB erred in concluding that County is liable for an alleged unfair labor practice committed by the Court of Common Pleas on the theory that the obligation to pay employees for an extended workday is separate from the Court of Common Pleas' decision not to extend the workday.

■ In accordance with section 1620 of The County Code,[4] the County Commissioners are the bargaining representatives for the purposes of collective bargaining with court-related and court-appointed employees. *County of Lehigh v. Pennsylvania Labor Relations Board,* 507 Pa. 270, 277, 489 A.2d 1325, 1328 (1985). Section 1620 of The County Code states:

> The salaries and compensation of county officers shall be as now or hereafter fixed by law. The salaries and compensation of all appointed officers and employes who are paid from the county treasury shall be fixed by the salary board created by this act for such purposes:
>
> Provided, however, That with respect to representation proceedings before the Pennsylvania Labor Relations Board or collective bargaining negotiations involving any or all employes paid from the county treasury, the board of county commissioners shall have the sole power and responsibility to represent judges of the court of common pleas, the county and all elected or appointed county officers having any employment powers over the affected employes. The exercise of such responsibilities by the county commissioners shall in no way affect the hiring, discharging and supervising rights and obligations with respect to such employes as may be vested in the judges or other county officers.

16 P.S. § 1620.

However, County maintains that the Court of Common Pleas is responsible for implementing the results of collective bargaining agreements and interest arbitration awards. County argues that if there was a dispute between Union and the Court of Common Pleas regarding imple-

---

**3.** This court's scope of review "is limited to determining whether there was a violation of constitutional rights, whether an error of law was committed or whether the [PLRB's] necessary findings are supported by substantial evidence." *Wilkes–Barre Township v. Penn-* *sylvania Labor Relations Board,* 878 A.2d 977, 982 n. 13 (Pa.Cmwlth.2005).

**4.** Act of August 9, 1955, P.L. 323, *as amended,* 16 P.S. § 1620.

mentation of a provision of the agreement that resulted in an unfair labor practice charge, the charge had to be filed against the Court of Common Pleas as the party responsible for implementation of the agreement. *See Teamsters Local 771 v. Pennsylvania Labor Relations Board*, 760 A.2d 496, 499 (Pa.Cmwlth.2000). County argues that the Court of Common Pleas refused to extend the workday, and that County is being held liable for an unfair labor practice committed by the Court of Common Pleas. According to County, the PLRB crafted an unworkable theory that there is an independent obligation on the part of County to pay Court of Common Pleas' employees for an extended workday, even though the Court of Common Pleas refused to implement the extended workday. Although the Miles Award extended the workday by one-half hour, the Court of Common Pleas refused to schedule the employees to work the extra time.

■ We observe that with respect to court-appointed employees certified under PERA, there is no single employer. *Sweet v. Pennsylvania Labor Relations Board*, 457 Pa. 456, 463, 322 A.2d 362, 366 (1974). The courts control decisions regarding hiring, firing and supervision of court-appointed personnel. *Jefferson County Court Appointed Employees Association v. Pennsylvania Labor Relations Board*, 603 Pa. 482, 501 n. 22, 985 A.2d 697, 709 n. 22 (2009). However, the County Commissioners are responsible for negotiation and implementation of employee wages and benefits. *See Pennsylvania Labor Relations Board v. American Federation of State, County and Municipal Employees, District Council 84, AFL–CIO*, 515 Pa. 23, 36–37, 526 A.2d 769, 775–76 (1987). Thus,

the monetary aspect of the eight-hour workday set forth in the Miles Award is a financial term of the award that County is responsible for implementing. Because County, not the Court of Common Pleas,[5] controls the expenditure of funds, County has an independent obligation to abide by the Miles Award, and it was, therefore, proper to name County in the unfair labor practices charge.

The provision of the Miles Award at issue provides that "the work shift shall consist of eight (8) work hours within a work day...." (Findings of Fact, No. 4.) County's liability in this case is grounded in its role of controlling the financial terms of employment. County, as co-employer, is obligated to implement the financial aspect of the Miles Award. Thus, County's failure to retroactively pay the negotiated wage of eight hours of pay per workday is an unfair labor practice that County must remedy.

■ Finally, County maintains that the PLRB erred in determining that the charge was timely. Section 1505 of PERA states that "[n]o petition or charge shall be entertained which relates to acts which occurred or statements which were made more than four months prior to the filing of the petition or charge." 43 P.S. § 1101.1505.

County maintains that Union filed the charge six years after the Court of Common Pleas refused to extend the workday for its employees. County asserts that there was no stay in effect during the three years that the petition to vacate the Miles Award was pending in the Court of Common Pleas. County claims that the

---

5. In *Ellenbogen v. County of Allegheny*, 479 Pa. 429, 434, 388 A.2d 730, 733 (1978), the Supreme Court stated "that courts have inherent authority to compel payment of funds reasonably necessary to administer the courts." Nonetheless, the county commissioners are the exclusive representative of management under PERA concerning wages and other financial terms of employment. *Id.* at 438, 388 A.2d at 735.

Miles Award was enforceable during that time, but that Union did not file a grievance or an unfair labor practice charge. County argues the statute of limitations commenced with the issuance of the Miles Award in 2004 and expired four months later while the Miles award was pending in the Court of Common Pleas. We disagree.

In addressing the timeliness of the charge, the PLRB stated:

Thus, in accordance with [*Pennsylvania Labor Relations Board v.*] *Commonwealth* [478 Pa. 582, 387 A.2d 475 (1978)], and Pa. R.A.P. 1736, the [PLRB] has consistently held that a charge filed within the statute of limitations following a court of common pleas' affirmance of an arbitration award is timely. However, the [PLRB] will dismiss, as premature, a charge alleging a refusal to comply with provisions of an arbitration award that are pending initial first level judicial review, because those provisions are not yet enforceable before the [PLRB].

(PLRB Final Order at 5.)

County, relying on this court's decision in *Lycoming County v. Pennsylvania Labor Relations Board*, 943 A.2d 333 (Pa. Cmwlth.2007),[6] maintains, however, that an interest arbitration award is immediately enforceable by the filing of an unfair labor practice charge with the PLRB.

In *Lycoming County,* the county filed a petition for review of an interest arbitration award with the trial court. The award increased the wages and benefits of union detectives employed by a county in an amount over that which the county had allowed for in its budget. *Id.* at 335 n. 7.

While the appeal was pending, the union filed a charge of unfair labor practices with the PLRB concerning the county's refusal to implement the award.[7] The hearing examiner concluded that the county violated section 6(1)(a), (c), and (e) of the Pennsylvania Labor Relations Act (PLRA)[8] and Act 111,[9] by refusing to implement the income aspect of the award. *Lycoming County,* 943 A.2d at 337. The county filed exceptions with the PLRB arguing that legislative action was required to fund the award and, therefore, it need not comply with the award. *Id.* at 338. The PLRB concluded that such a claim is not viable under Act 111 and the county's refusal to fund the award was an unfair labor practice. *Id.* Additionally, the PLRB determined that at the time the interest award was issued, the county had discretionary funds in its budget to pay the detectives increased salary and benefits. *Id.* at 338. The PLRB also concluded that the hearing examiner did not err in failing to grant the county's petition for dismissal or continuance while the petition for review of the award was pending before the trial court because the county, in essence, merely ar-

---

**6.** County also relies on this court's unpublished decision in *County of Lycoming v. Pennsylvania Labor Relations Board,* 943 A.2d 333 (Pa.Cmwlth.2007). However, in accordance with this court's Internal Operating Procedures § 414, only unreported decisions of this court issued after January 15, 2008, may be cited for their persuasive value.

**7.** The county also filed a motion for dismissal and/or continuance with the PLRB arguing "that the filing of the petitions for review of the arbitration awards in the trial court acted

as an automatic supersedeas for the appeal provisions of the awards pursuant to Pa. R.A.P. 1736." *Lycoming County,* 943 A.2d at 336 n. 11. Despite the motion, the hearing examiner disposed of the unfair labor practice charges. *Id.*

**8.** Act of June 1, 1937, P.L. 1168, *as amended,* 43 P.S. § 211.6(1)(a), (c), and (e).

**9.** Act of June 24, 1968, P.L. 237, *as amended,* 43 P.S. §§ 217.1–217.10.

gued that the arbitration panel awarded more than the county desired. *Id.* at 339. Thus, there was no arguable claim of error in the award within the trial court's jurisdiction. *Id.*

On appeal, this court affirmed, agreeing that the county commissioners could have transferred funds to pay the raises and that such a transfer would not have constituted legislative action under section 7(b) of Act 111.[10] *Lycoming County,* 943 A.2d at 347–48. Furthermore, this court concluded that the hearing examiner and the PLRB had jurisdiction to dispose of the unfair labor practice charges while the appeal of the award was pending before the trial court. *Id.* at 351.

Unlike *Lycoming County,* this case does not involve the argument that legislative action was necessary to implement the award or that the arbitration panel committed legal error by including provisions in an award that were beyond the legal authority of the panel to award. Here, County filed an appeal of the Miles Award challenging, on constitutional grounds, the arbitrator's jurisdiction to award an eight-hour workday. As such, *Lycoming County,* wherein the county refused to comply with an award claiming legislative action was required, is distinguishable.

■ The PLRB responds that for purposes of the commencement of the statute of limitations for a refusal to comply with an arbitration award, the Supreme Court in *Commonwealth* stated:

[W]hen the complainant in an unfair labor practice action charges a refusal "... to comply with the provisions of an arbitration award deemed binding under

Section 903 ...," the Board must determine first if an award exists, second, if the appeal procedure available to the aggrieved party under Pa. R.J.A. 2101 has been exhausted, and third, if the party has failed to comply with the provisions of the arbitrator's decision. Once the appeal procedure provided by Pa. R.J.A. 2101 has been completed (whether by appeal to the Commonwealth Court and petition for allowance of appeal to us or by allowing the time period for appeal to expire without taking any action), the award is final and "deemed binding" for purposes of Section 1301.

478 Pa. at 591, 387 A.2d at 479 (quoting section 1201 of PERA, 43 P.S. § 1101.1201). A PERA grievance arbitration award is not binding until it is "final in the sense that it is no longer appealable." *Id.*

The 1987 amendments to Pa. R.A.P. 1736 altered the protection provided to employers. Pa. R.A.P. 1736 now provides:

(a) **General rule.**—No security shall be required of:

\* \* \*

(2) Any political subdivision ... except in any case in which a common pleas court has affirmed an arbitration award in a grievance or similar personnel matter.

\* \* \*

(b) *Supersedeas* **automatic.**—Unless otherwise ordered pursuant to this chapter the taking of an appeal by any party specified in Subdivision (a) of this rule shall operate as a *supersedeas* in favor

---

10. Section 7(b) of Act 111 provides:

(b) With respect to matters which require legislative action for implementation, such legislation shall be enacted ... in the case of a political subdivision of the Commonwealth, within one month following publi-

cation of the findings. The effective date of any such legislation shall be the first day of the fiscal year following the fiscal year during which the legislation is thus enacted. 43 P.S. § 217.7(b)

of such party, which *supersedeas* shall continue through any proceedings in the United States Supreme Court.

The note to Pa. R.A.P. 1736 explains that "[t]he 1987 amendment eliminates the automatic *supersedeas* for political subdivisions on appeals from the common pleas court where that court has affirmed an arbitration award in a grievance or similar personnel matter."

■ We agree with the PLRB that the statute of limitations under section 1505 of PERA begins to run when the Court of Common Pleas affirms the award or whenever the appellate process is exhausted, whichever occurs first. Here, County appealed the Miles Award challenging, on constitutional grounds, the arbitrator's jurisdiction to award wages for an eight-hour workday, a matter that is within the Court of Common Pleas' narrow review of the award. Upon review, the Court of Common Pleas did not affirm the Miles Award, but instead vacated the provision awarding pay for an eight-hour workday. Thus, upon issuance of the Court of Common Pleas' order, the PLRB had nothing to enforce. Union appealed to this court.[11] This court reinstated the eight-hour workday, and County filed a petition for allowance of appeal with the Supreme Court. County is a political subdivision and, pending disposition of the petition for allowance of appeal, there was an automatic supersedeas of this court's reinstatement of the Miles Award. The Supreme Court denied the petition for allowance of appeal on April 8, 2010. At this time the Miles Award became enforceable before the PLRB and, thus, the charge of unfair labor practices filed on August 5, 2010, was timely.

■ In accordance with *Commonwealth*, all appeals must be exhausted before an arbitration award may be enforced through an unfair labor practice proceeding. The amendments to Pa.R.A.P. 1736 included changes to appeals from the court of common pleas, affording an earlier opportunity to seek enforcement in those cases where the grievance arbitration award is affirmed at the common pleas court level; this did not occur here. The amendments to Pa.R.A.P. 1736 did not lift the automatic supersedeas that the public employer enjoys on contested provisions of a grievance arbitration award prior to the common pleas court's ruling. An award is enforceable once it is affirmed by a common pleas court. *See City of Scranton v. Pennsylvania Labor Relations Board,* 50 A.3d 774, 781 n. 8 (Pa.Cmwlth.2012) (noting that an arbitration award becomes enforceable only after it is affirmed by a common pleas court).

Accordingly, we affirm the decision of the PLRB.

## ORDER

AND NOW, this *18th* day of *July*, 2013, we hereby affirm the June 19, 2012, order of the Pennsylvania Labor Relations Board.

## DISSENTING OPINION BY Judge McCULLOUGH.

Respectfully, I dissent. The Majority holds Washington County (County) liable for unfair labor practices where there is nothing in the Hearing Examiner's findings to indicate that the County's conduct was "unfair." The County, in acting on behalf of the Washington County Court of Common Pleas (Court of Common Pleas)

11. Union is not a political subdivision. Therefore, its appeal to this court could not have effectuated a stay of the trial court's order vacating the Miles Award. Pa. R.A.P. 1736(a).

is essentially being held liable for the acts of the principal. The unfair labor practice did not name the Court of Common Pleas. Therefore, I would reverse the order of the Pennsylvania Labor Relations Board (PLRB) and would dismiss the case.

Also, I believe the Majority overlooks the meaning, in part, of the Petersen I and II arbitration awards. It is clear from the record that the issue of pay for extended work day (and retroactivity) was raised and the award in Petersen I provided specific compensation to address that issue. Hence, no unfair labor practice was committed because the underlying monetary issue was addressed in arbitration. I note also that both Petersen awards dismissed all other claims. Hence, the unfair labor practice petition is a collateral attack on the Petersen arbitration awards. Those awards are *res judicata* as to the claim for extra money. The union received it in Petersen I.

In addition, the unfair labor practice petition was untimely. Three years passed between the court's refusal to implement the extended work hour and Judge Millin's decision vacating that award. There was no stay of the award during this period, nor did the petition to vacate operate as a supersedeas. If the Union had timely filed within that period and the County had lost on its petition to vacate, the County could not have defeated an unfair labor practice petition on the grounds its petition to vacate was pending.

The Majority's decision also ignores the express language and plain meaning of

Section 1620 of The County Code,[1] which provides that the County Commissioners are merely the collective bargaining representatives for the Court of Common Pleas with court-related and court-appointed employes. *County of Lehigh v. Pennsylvania Labor Relations Board*, 507 Pa. 270, 277, 489 A.2d 1325, 1328 (1985). Section 1620 of The County Code states:

> The salaries and compensation of county officers shall be as now or hereafter fixed by law. The salaries and compensation of all appointed officers and employes who are paid from the county treasury shall be fixed by the salary board created by this act for such purposes: Provided, however, that with respect to representation proceedings before the Pennsylvania Labor Relations Board or collective bargaining negotiations involving any or all employes paid from the county treasury, the board of county commissioners shall have the sole power and responsibility to represent judges of the court of common pleas, the county and all elected or appointed county officers having any employment powers over the affected employes. *The exercise of such responsibilities by the county commissioners shall in no way affect the hiring, discharging and supervising rights and obligations with respect to such employes as may be vested in the judges or other county officers.*

16 P.S. § 1620 (emphasis added.)

Section 1620 of The County Code is based upon separation of powers concerns,[2] and pursuant to this provision,

---

1. Act of August 9, 1955, P.L. 323, *as amended*, 16 P.S. § 1620.

2. As this Court stated in *L.J.S. v. State Ethics Commission*, 744 A.2d 798, 800–801 (Pa. Cmwlth.2000):

> The Constitution of Pennsylvania establishes three separate, equal and indepen-

dent branches of government: the General Assembly, the Executive and the Judiciary. Each branch is clothed with certain exclusive rights and powers. Neither the General Assembly nor the executive branch of government, acting through an administrative agency may constitutionally infringe upon the powers or duties of the [county]

"county commissioners are not prohibited from negotiating 'wages, hours and other terms and conditions of employment' provided such terms do not impinge upon judicial control of hiring, discharge and supervision in some concrete manner." *County of Lehigh*, 507 Pa. at 278, 489 A.2d at 1329. Stated otherwise, section 1620:

> makes clear that by appointing county officials to sit on behalf of judges it in no way detracts from the authority of judges to "hir[e], discharg[e], and supervis[e]" employes comprising the bargaining unit. Thus, the Legislature has advanced the orderly administration of [collective bargaining], without allowing another branch of government to interfere with judicial authority over court personnel, an essential element of the judicial function.

*Ellenbogen v. County of Allegheny*, 479 Pa. 429, 436, 388 A.2d 730, 734 (1978). *See Pennsylvania Labor Relations Board v. American Federation of State, County & Municipal Employees, District Council 84*, 515 Pa. 23, 526 A.2d 769 (1987) (analyzing provisions in bargaining agreement for sick leave and funeral leave, pay for jury duty and shift differential and holding that all were permissible areas of bargaining but that sick and funeral leave provi-

sions impacted on the court's constitutional supervisory authority and thus required prior consultation with the judiciary); *Commonwealth ex rel. Bradley v. Pennsylvania Labor Relations Board*, 479 Pa. 440, 447–48, 388 A.2d 736, 739–40 (1978) (concluding that "should collective bargaining impair the independence of the judicial function, nothing in Act 195 nor our decision in *Ellenbogen* prohibits courts from taking reasonable, appropriate measures to maintain their independence.").

In this case, the County was charged with violating section 1201(a)(1) and (a)(5) of the Public Employe Relations Act (PERA).[3] Notably, both of these provisions require a finding of wrongful intent. *See Morrisville School District v. Pennsylvania Labor Relations Board*, 687 A.2d 5 (Pa.Cmwlth.1996) (discussing the duty to bargain in "good faith"); *Harbaugh v. Pennsylvania Labor Relations Board*, 107 Pa.Cmwlth. 406, 528 A.2d 1024, 1028 (1987) ("We emphasize, however, that the facts found here contain no indication of undue influence, coercion or unlawful pressure."). Yet the facts as found by the Hearing Examiner merely established that the County Commissioners fulfilled their duty to act as bargaining representatives and later deferred to the judgment of the Pres-

---

judiciary. The courts of this Commonwealth under our Constitution have certain inherent rights and powers to do all such things as are reasonably necessary for the administration of justice. The power to select judicial assistants is an inherent corollary of the judicial power itself and the power to supervise or discharge such personnel flows essentially from the same source. *Eshelman v. Commissioners of Berks County*, 62 Pa.Cmwlth. 310, 436 A.2d 710 (1981), *affirmed per curiam*, 502 Pa. 430, 466 A.2d 1029 (1983). That power may not be consistent with the constitutional doctrine of separation of powers, be policed, encroached upon or diminished by another branch of government.
*Id.*

3. Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. § 1101.1201(a). Section 1201(a) of PERA provides, in pertinent part:

> (a) Public employers, their agents or representatives are prohibited from:
> (1) Interfering, restraining or coercing employes in the exercise of the rights guaranteed in Article IV of this act.
> * * *
> (5) Refusing to bargain collectively in good faith with an employes representative which is the exclusive representative of employes in an appropriate unit, including but not limited to the discussing of grievances with the exclusive representative.

43 P.S. § 1101.1201(a).

ident Judge of the Court of Common Pleas, who opined that the Miles Award constituted an unlawful infringement on the judiciary's constitutional authority. Ultimately, as a result of the Miles Award, the County Commissioners were faced with an irreconcilable conflict: the Commissioners could either represent the interests of the Court of Common Pleas, a coordinate and equal branch of local government, as they are obligated to do so under Section 1620 of The County Code; or, the Commissioners could forego their statutory duty to represent the Court of Common Pleas, yield to the terms of the Miles Award, and pay the employes in accordance with the Miles Award. Either way, the County Commissioners could not do both, for this would essentially amount to a conflict of interest—that is, it would be incongruous for the County Commissioners to challenge the Miles Award on the ground that it violated the constitutional authority of the Court of Common Pleas while at the same time pay the employes for work that they are not performing. In any event, not one of the Hearing Examiner's thirteen findings of fact supports an inference that the County committed an unfair labor practice or acted with wrongful intent.[4] Rather, the Hearing Examiner found the County liable for the sole purpose of securing "a monetary remedy." (Hearing Examiner's op. at 11.)

The Majority, nonetheless, assumes the role of the fact-finder, alters the nature of the unfair labor charges, and finds that the "County's failure to retroactively pay the negotiated wage of eight hours of pay per workday is an unfair labor practice that [the] County must remedy." (Maj. op. at 834.) However, the Hearing Examining did not make any findings as to whether the

County's conduct in failing to make retroactive payments, in and of itself, constituted an unfair labor practice. Indeed, the PLRB expressly disavowed that this was the theory of the unfair labor charges, rejecting the County's argument "that the Hearing Examiner erred in holding that 'the remedy of backpay' is a separate unfair practice against the Commissioners" as "mischaracterize[ing] the unfair practices against the County." (PLRB's Decision at 6.)

Moreover, the **essence** of the Hearing Examiner's as well as the PLRB's opinions is that the County is financially liable for the alleged unfair labor practices of the Court of Common Pleas. For example, see the Hearing Examiner's opinion at page 10: "In this case, the unfair practice charge is the failure to pay backpay to employes *resulting from the Court's refusal to implement the Miles Award* over six years ago" (emphasis supplied); "Although the County could not implement the workday extension, it could certainly fund the backpay owed to employes *because the Court refused to implement it*" (emphasis supplied). And also see the PLRB's Decision at 7:

Here, as regards the implementation of the Miles Award, there is no dispute that the President Judge of the Court of Common Pleas was the principal with respect to matters of scheduling court-appointed employes, and decided not to have [the Employes] actually work eight hours per day. However, the separate issue involved is the County's failure to pay employes for eight hours per day as set forth in the Miles Award, a financial matter over which the Commissioners were the principal in bargaining, and responsible for implementing as a joint

---

4. In light of this Court's split decision in *Washington County*, I believe that the Court of Common Pleas had a reasonable basis not to implement the Miles Award and question whether the court's decision reflects any wrongful intent on its part.

employer of the County's court-appointed employes.

(PLRB's Decision at 7.) Therefore, it is apparent from the opinions of the Hearing Examiner and the PLRB that the County's liability in this case is inexorably intertwined with the Court of Common Pleas' alleged unfair labor practice in failing to implement the Miles Award. The increase in money in the Miles Award is linked to additional work, and is derived therefrom. The Majority and the PLRB, however, decouple pay from work and hold the agent, the County, liable for not paying extra money, when no extra work was performed. If the Union had wanted to preserve this issue, it should have directed its members to work the extra half hour, (e.g., through lunch), during the time period at issue.

The Majority, however, concludes that the County is liable because it "controls the expenditure of funds" and "has an independent obligation to abide by the Miles Award." (Maj. op. at 834.) True, the County may control the power of the purse, and may be an indispensable party to this action because it is the means by which to award back-pay as a result of an unfair labor practice. However, the County should not be held strictly and vicariously liable for the alleged unfair labor practices stemming from the Court of Common Pleas' decision not to implement the Miles Award just because the County has the "deep pocket." At the end of the day, the Majority's decision spurs conflict among coordinate branches of government, and penalizes the County for deferring to and respecting the judicial autonomy of the Court of Common Pleas and pursuing litigation on the court's behalf. Indeed, it is paradoxical that the Majority concludes that the Miles Award was not enforceable until the Supreme Court denied allowance of appeal, while simultaneously sanctioning, in essence, the Hearing Examiner's and the PLRB's conclusion that the County committed an unfair labor practice in failing to pay the employes before the Miles Award was enforceable and for work the employees did not do.

Lastly, the Majority by conferring liability on the County for an unfair labor practice for in essence, not defying an order of the Court of Common Pleas, by asserting the County had "an independent obligation" to do so, fails to recognize that the counties do not have an independent duty to fund the courts. *See County of Allegheny v. Commonwealth,* 93 Pa.Cmwlth. 112, 500 A.2d 1267 (1985). This position was rejected by our Supreme Court in the *County of Allegheny v. Commonwealth,* 517 Pa. 65, 534 A.2d 760 (1987), and reiterated by the high court as recently as six months ago in *Pennsylvania State Ass'n of County Commissioners, et al. v. Commonwealth,* —— Pa. ——, 52 A.3d 1213 (2012). The obligation to fund the courts is the Commonwealth's pursuant to the Unified Judicial System and while the mechanism for that is as yet unresolved, the duty is nonetheless clear, and for the Majority to further burden a county by holding it liable for an unfair labor practice by following the directive and subsequent order of an independent and unified judiciary is, I respectfully submit, fundamentally at odds with these decisions and the Pennsylvania Constitution.

Accordingly, because the PLRB should have sustained the County's exceptions, I would reverse the order of the PLRB.