## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| The Honorable Maria Musti Cook, in her official capacity as the President Judge of the Court of Common Pleas of York County, Nineteenth Judicial District; and The Court of Common Pleas of York County, | : : : : : : : : |
| Petitioners | : |
| | : |
| v. | : No. 161 M.D. 2021 |
| | : Argued: June 23, 2022 |
| | : |
| The Pennsylvania Labor Relations Board; and SEIU Local 668 PSSU, | : : |
| Respondents | : |

**BEFORE:**      **HONORABLE RENÉE COHN JUBELIRER,** President Judge
                         **HONORABLE STACY WALLACE,** Judge
                         **HONORABLE BONNIE BRIGANCE LEADBETTER,** Senior Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**      **FILED: November 2, 2022**

At issue is whether the Pennsylvania Labor Relations Board (Board) has jurisdiction when a judicial employer disciplines a judicially appointed employee. In this case, a probation officer received a written reprimand for violating York County's (County) search and seizure policy. The probation officer, by and through his union representative, utilized the grievance process contained in the internal court process that had been incorporated into the County's collective bargaining agreement (CBA). Thereafter, the probation officer's discipline was enhanced from a written reprimand to a two-day suspension. As a result of this enhancement, the probation officer, with the assistance of his union, filed an unfair labor practice charge with the Board.

The Secretary of the Board issued a complaint and notice of hearing on the unfair labor practice charge. The Court of Common Pleas of York County (Common Pleas) filed a motion to dismiss the complaint, arguing that the Board was without jurisdiction based on the separation of powers doctrine as the discipline involved a judicially appointed employee. In *SEIU Local 668 PSSU v. York County and York County Court of Common Pleas (York County)*, PERA-C-18-120-E (April 20, 2021), the Board denied the motion to dismiss but determined that no unfair labor practice occurred. The Honorable Maria Musti Cook, President Judge of the Court of Common Pleas of York County, and Common Pleas (together, Petitioners) filed a "Petition for Review in the Nature of an Appeal and, Alternatively, An Action for Declaratory Judgment" (Petition), seeking review of the Board's determination in this Court's appellate jurisdiction and/or seeking a declaration from this Court in its original jurisdiction that the Board was without jurisdiction to make that determination. Presently before this Court for disposition is the Application for Summary Relief pursuant to Pennsylvania Rule of Appellate Procedure 1532(b), Pa.R.A.P. 1532(b) (Application), filed by the Board and the Service Employees International Union, Local 668, Pennsylvania Social Services Union (SEIU) (together, Respondents). In the Application, Respondents seek the dismissal of the Petition in its entirety. Upon careful review, we deny Respondents' Application and stay the appellate portion in the Petition while the Court resolves Petitioners' request for declaratory judgment.

## I. BACKGROUND

### A. *Procedural History*

These are the facts alleged in the Petition. The County is party to a CBA with SEIU, which is the bargaining agent for court-appointed employees, including those

2

in the Probation and Parole and Domestic Relations units. (Petition ¶ 9.) The County is the bargaining representative for Common Pleas. (*Id.*) The County and SEIU have entered into various agreements over the years. (*Id.* ¶ 10, Exhibit (Ex.) B.) The CBA at issue contains a provision that states Common Pleas did not waive "its exclusive right to hire, fire, or supervise employees under Section 1620 of The County Code."[1] (*Id.* ¶ 11, Ex. B at 2-3.)

On February 26, 2018, Adult Probation Officer Jason Walker (Probation Officer) received a written reprimand from Common Pleas "for failing to follow court procedures, failing to debrief his supervisor following an incident, and failing to submit a written incident report within 72 hours of an incident." (*Id.* ¶ 13.) Probation Officer was disciplined because he "conduct[ed] a warrantless search of a residence that was **not** under the active supervision of the [Common Pleas'] Department of Probation Services," he "ordered an individual not under court supervision to dispose of property," and he "did not have the resident complete and sign a Consent to Search form, despite claiming to [have] receive[d] verbal permission to search the residence." (*Id.* ¶ 14 (emphasis in original), Ex. C.) Thereafter, Probation Officer's union, SEIU, filed a grievance on his behalf demanding that Common Pleas withdraw the reprimand. (*Id.* ¶ 15, Ex. C.) On March 5, 2018, April Billet-Barclay, Director of Probation Services (Probation Director), "objected to [SEIU's] grievance on the basis of separation of powers principles," responded to the grievance, and increased Probation Officer's discipline to a two-day suspension. (*Id.* ¶ 16, Ex. C.) Probation Officer's discipline was increased as a result of a "gross disregard for the Fourth Amendment[2] rights of the

[1] Act of August 9, 1955, P.L. 323, *as amended*, 16 P.S. § 1620.
[2] The Fourth Amendment to the United States Constitution provides:
**(Footnote continued on next page…)**

3

citizens of [the] community[, Probation Officer's] failure to accept any responsibility for [his] behavior, [his] complete disregard for department policy . . . , and the poor example [Probation Officer] set for rookie officers." (*Id.*, Ex. C at 3.)

On May 25, 2018, SEIU filed an unfair labor practice charge with the Board seeking to revert Probation Officer's discipline from a two-day suspension to a written warning. (*Id.* ¶ 18.) The Board's Secretary issued a complaint and notice of hearing on June 18, 2018. (*Id.*, Ex. A.) Common Pleas filed a motion to dismiss the complaint, arguing that, under *Beckert v. American Federation of State, County and Municipal Employees*, 425 A.2d 859 (Pa. Cmwlth. 1981), the Board was without jurisdiction to review Probation Officer's discipline based on the doctrine of separation of powers because the unfair labor charge "clearly involved discipline of a court employee." (*Id.* ¶ 19.) In lieu of a hearing, the parties stipulated facts and briefed the matter before the Board's hearing examiner. (*Id.* ¶ 20.) Common Pleas' brief did not address the merits, continuing to assert the Board did not have jurisdiction. The hearing examiner issued a proposed decision and order on May 13, 2019, that held that the "Board had jurisdiction, considered the merits of Probation Officer's discipline, and ultimately concluded that" SEIU failed to establish an unfair labor practice and, as such, rescinded the complaint and dismissed the unfair practice charge. (*Id.* ¶ 21, Ex. A at 1.)

---

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.

4

Common Pleas filed exceptions to the proposed decision and order, again arguing that under the doctrine of separation of powers, the Board was "without jurisdiction to consider unfair labor practice charges that involve discipline of a court employee." (*Id.* ¶ 22.) On April 20, 2021, the Board adopted the proposed decision and order and dismissed Common Pleas' exceptions, concluding "there is binding precedent expressly holding that the Board has jurisdiction to hear unfair practice cases concerning the rights of court-appointed employees under" the Public Employe Relations Act (PERA).[3] (Final Order at 1-2 (citing *Teamsters Local 115 v. Pa. Lab. Rels. Bd.*, 619 A.2d 382, 382 (Pa. Cmwlth. 1992)).) Concluding it had jurisdiction, the Board reviewed the unfair labor practice charge and found that the facts "reveal[ed] that [SEIU] failed to meet its burden of proving a *prima facie* case of discrimination." (Final Order at 2.) The Board, therefore, affirmed the hearing examiner's proposed decision and order, rescinding the complaint and dismissing the unfair labor practice charge.

## B. *The Petition and Response*

Petitioners then filed the Petition invoking this Court's appellate and original jurisdiction.[4] In the Petition, Petitioners challenge the Board's jurisdiction to review the discipline of a judicial employee, arguing that the Board's exercise of jurisdiction violates the doctrine of separation of powers. (Petition ¶¶ 8, 30-31.) Petitioners request that this Court overrule the Board's Final Order and further "find that absent an unfair labor practice charge alleging [Common Pleas] is interfering with,

---

[3] Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101-1101.2301.

[4] This Court's scope of review of a final order of the Board "is limited to determining whether there was a violation of constitutional rights, whether an error of law was committed, or whether the [Board's] necessary findings are supported by substantial evidence." *Lycoming County v. Pa. Lab. Rels. Bd.*, 943 A.2d 333, 341 n.20 (Pa. Cmwlth. 2007).

5

coercing, or restraining organizing and bargaining activity of court employees, the Board is without jurisdiction to entertain an unfair labor practice charge involving the hire, fire, or supervision of court employees" after the initial bargaining and organizing period is over, and order the Board to dismiss the complaint before it for lack of jurisdiction. (*Id.* ¶ 38(a), (b).) Alternatively, Petitioners seek a declaratory judgment from the Court declaring that "absent an unfair labor practice charge alleging [Common Pleas] is interfering with, coercing, or restraining organizing and bargaining activity of court employees, the Board is without jurisdiction to entertain an unfair labor practice charge involving the hire, fire, or supervision of court employees." (*Id.* ¶ 39.) In support of their claim that the Board is consistently exceeding its jurisdiction in reviewing the discipline of judicial employees, Petitioners cite to *SEIU Local 668 v. Chester County and Chester County Court of Common Pleas*, PERA-C-19-26-E (Proposed Decision & Order January 15, 2020) (*Chester County*), as evidence of the Board's extra-jurisdictional review. In that case, a Board hearing examiner held that the Board had jurisdiction to consider an unfair labor practice charge brought by SEIU based on allegations that the judicial employer held a meeting with an employee that could have resulted in discipline, the employee asked for a union representative,[5] and a supervisor told the employee that the judicial employer's position was that the employee did not have a right to have a union representative present. (*Id.* ¶ 32, Ex. D at 1-2.) Specifically, Petitioners assert that the *Chester County* matter is important in two respects: "[f]irst, the hearing [examiner] concluded that the judiciary must produce evidence that the [c]ourt has exercised its judicial function in order for separation of powers to apply,"

---

[5] This was an alleged violation of the judicial employee's *Weingarten* rights, which is the right of a union employee to have a union representative at pre-disciplinary, investigative meetings. *Nat'l Lab. Rels. Bd. v. J. Weingarten, Inc.*, 420 U.S. 251 (1975).

6

and "[s]econd, the hearing [examiner] determined that such evidence must show that (1) there was a clear and distinct act by the [c]ourt, in the form of a determination and communication of the [p]resident [j]udge, and (2) a clear reliance by the [c]ourt upon its statutory obligations." (Petition ¶ 33.)[6]

Respondents filed an Answer denying the allegations in the Petition and provided further answers to most of Petitioners' averments, explaining why the Petition is without merit.

## II. THE APPLICATION AND THE PARTIES' ARGUMENTS[7]

### A. *Respondents' Arguments*

Respondents filed their Application and a brief in support thereof arguing that they are entitled to summary relief on the original jurisdiction portion of the Petition because challenges to the Board's jurisdiction require a case-by-case analysis of whether an unfair labor practice occurred and the blanket declaratory relief that Petitioners seek is, therefore, not appropriate. Respondents further assert that summary relief should be granted as to the appellate portion of the Petition because having prevailed before the Board, Petitioners lack standing to appeal the Board's decision to this Court.

On the first assertion, Respondents argue that Petitioners' request for a "blanket declaratory judgment divesting court-appointed employes or their representatives of a forum to allege and present any claims of unfair practices under PERA is not consistent with due process, nor appropriate for declaratory relief."

---

[6] Because the hearing examiner in *Chester County* concluded that these two things were not established, the hearing examiner denied the judicial employer's motion to dismiss and found that it violated Section 1201(a)(1) of PERA, 43 P.S. § 1101.1201(a)(1). (Petition, Ex. D at 7.) The Board has not issued its decision in *Chester County*, and, thus, this matter is not before the Court at this time.

[7] We have reorganized the parties' arguments for ease of discussion.

7

(Application ¶ 31; Respondents' Brief (Br.) at 25.) Respondents assert that Pennsylvania courts have repeatedly held that "the [Board] has the exclusive jurisdiction, in the first instance, to decide if an unfair labor practice has occurred,"[8] and that this jurisdiction ends when it determines whether such practice has occurred. (Respondents' Br. at 13-15 (citing *Mazzie v. Commonwealth*, 432 A.2d 985 (Pa. 1981); *Pa. Lab. Rels. Bd. v. Chester & Del. Cntys. Bartenders, Hotel & Rest. Emps. Union, Local No. 677*, 64 A.2d 834 (Pa. 1949)).) Respondents argue that under the precedent, there are circumstances where the Board has jurisdiction, namely, where the unfair labor practice charge alleges that a court of common pleas is "interfering with, coercing, or restraining organizing and collective bargaining activity," which Petitioners' request for relief acknowledges. (*Id.* at 15 (citing Petition ¶ 39).) Respondents explain that such circumstances existed here because the unfair labor practice charge alleged that Probation Director, "as the employer agent for . . . Common Pleas and York County, had interfered with, coerced, or restrained organizing and bargaining activity of court employes" under PERA, which includes the grievance process.[9] (*Id.* at 23.) Therefore, Respondents assert, under PERA and the precedent, the Board had the authority in the first instance to conclude whether this matter fell within its jurisdiction and, if so, whether a violation occurred. (*Id.*) Respondents argue Petitioners' reliance on *Chester County* is misplaced because there has been no final order by the Board in that case, meaning that Petitioners cannot rely on it. (*Id.* (citing Section 763 of the Judicial Code, 42 Pa.C.S. § 763; Pennsylvania Rule of Appellate Procedure 341, Pa.R.A.P. 341;

---

[8] SEIU joined in the Board's Brief.

[9] The United States Supreme Court has explained that filing grievances is part and parcel of collective bargaining. *See United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987).

*Angelucci v. Pa. Lab. Rels. Bd.* (Pa. Cmwlth., No. 169 C.D. 2017, filed Apr. 3, 2017)[10]); Application ¶ 32.) Thus, Respondents argue that Petitioners' request for declaratory judgment must be dismissed as a matter of law. (*Id.* at 26-27.)

On the second assertion, Respondents argue that the requested relief in the Petition "has already been provided by the Board in the April 20, 2021 Final Order." (Application ¶ 16.) Thus, "[h]aving prevailed before the Board on the very basis [of] the jurisdictional arguments raised in the Petition for Review, [Petitioners are] not aggrieved and lack[] standing to appeal the Board's Final Order." (Respondents' Br. at 23 (citing *City of Philadelphia v. Pa. Lab. Rels. Bd.* (Pa. Cmwlth., No. 1052 C.D. 2019, filed Dec. 14, 2020)); Application ¶¶ 14-17.) Accordingly, Respondents request that this Court find that Petitioners lack standing as a matter of law and dismiss the appellate portion of the Petition on this basis. (Application ¶ 18.)

### B. Petitioners' Arguments

Petitioners filed an Answer to Respondents' Application and a brief in support thereof arguing as follows. Petitioners first argue that declaratory relief is proper because they have "always asserted a purely legal challenge to the Board's jurisdiction." (Petitioners' Br. at 33 (citing *Se. Pa. Transp. Auth. v. City of Philadelphia*, 101 A.3d 79, 90 (Pa. 2014)).) Because Petitioners need "relief from [the] uncertainty and insecurity with respect to rights, status, and other legal relations" related to the Board's continued assertion of jurisdiction over judicial employers' decisions regarding the hiring, firing, and supervising of judicial employees, and the administrative remedies are insufficient to address these

---

[10] Pursuant to Pennsylvania Rule of Appellate Procedure 126(b), Pa.R.A.P. 126(b), and Section 414(a) of the Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a), an unreported panel opinion, while not precedential, may be cited as persuasive.

concerns, Petitioners contend that declaratory relief is warranted. (*Id.* at 33-34.) Petitioners explain that both this matter and *Chester County* serve as "illustrative of a larger practice on the part of the Board of exercising jurisdiction in cases where the Constitution demands it should not." (*Id.* at 34.) Additionally, Petitioners argue that they are seeking to have the Board follow *Beckert* and *Teamsters Local 115* in this matter and moving forward. (Petitioners' Answer to Respondents' Application at 13.) Within the context of those cases, Petitioners contend that the Board has jurisdiction only if the unfair labor practice charge involves a court employee actually organizing co-workers or bargaining with a county, and the charge is based on some other time period, it must be dismissed by the Board for want of jurisdiction. (*Id.* at 13-14.) Thus, according to Petitioners, declaratory relief is proper because "[t]he Board's disruption of judicial supervision is real and [] causing uncertainty and insecurity not only with respect to Petitioners' ability to manage its employees, but with the Unified Judicial System's ability to manage its workforce as a whole." (Petitioners' Br. at 35.)

Petitioners next argue that Respondents ignore the central issue in this matter, which is whether the Board's exercise of jurisdiction in and of itself violated the separation of powers doctrine. According to Petitioners, the cases cited by Respondents in support of their position relate to actions by public employees generally under PERA, not judicial employees in particular, making those cases inapt. (Petitioners' Br. at 12.) Petitioners contend that Respondents misstate the disposition in the Final Order and misperceive the relief sought in that matter, which was a determination that the Board lacked jurisdiction, not that no unfair labor practice occurred. According to Petitioners, contrary to Respondents' characterization, this matter is a separation of powers case and not a labor case and,

reviewed in that framework, the Application should be denied. (*Id.* at 13.) To that end, Petitioners maintain that "**any** attempt by other branches of Commonwealth government to assume jurisdiction over the judiciary's 'employee selection, supervision or discharge' is unconstitutional." (*Id.* at 15 (emphasis in original).) Petitioners point to *Renner v. Court of Common Pleas of Lehigh County*, 195 A.3d 1070 (Pa. Cmwlth. 2018), *Thomas v. Grimm*, 155 A.3d 128 (Pa. Cmwlth. 2017), *Russo v. Allegheny County*, 125 A.3d 113 (Pa. Cmwlth. 2015), and *L.J.S. v. State Ethics Commission*, 744 A.2d 798 (Pa. Cmwlth. 2000), as examples of where the Court has held that judicial employees are not subject to general statutes protecting employee rights.[11] (*Id.* at 15-17.) Relying on *Beckert*, Petitioners contend that "the Board should have determined that it was without jurisdiction over [Probation Officer's] unfair labor practice charge from the outset," and dismissed the charge before reaching its merits. (*Id.* at 20.) "To hold otherwise would eradicate the [judiciary's] inherent right to hire, fire and supervise its employees entirely." (*Id.* at 22 (citing *First Jud. Dist. v. Pa. Hum. Rels. Comm'n*, 727 A.2d 1110, 1112 (Pa. 1999)).)

Petitioners also argue that Common Pleas did not waive its supervisory rights when entering into the CBA or incorporating its internal grievance system into the CBA and "[it] certainly did not agree to any administrative agency oversight of its operations." (*Id.* at 24.) Even if this was not the case, Petitioners argue that their agreement to follow an internal grievance process did not waive their protection under the separation of powers doctrine. (*Id.* (citing *Thomas*, 155 A.3d at 138-39).)

---

[11] The statutes at issue in those cases included: the Public Official and Employee Ethics Act, 65 Pa.C.S. §§ 1101-1113; the Whistleblower Law, Act of December 12, 1986, P.L. 1559, *as amended*, 43 P.S. §§ 1421-1428; and the Pennsylvania Human Relations Act, Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. §§ 951-963.

According to Petitioners, any argument that a judicial district's "internal policies are only effective if a non-judicial agency can exercise jurisdiction over their application" is misplaced because the "Unified Judicial System has its own . . . enforcement mechanisms for those policies." (*Id.* at 25.)

Finally, with respect to their alleged lack of standing, Petitioners argue that the challenge is not to the merits of the Board's decision, i.e., that no unfair labor practice occurred, but to the Board's assertion of jurisdiction at the outset. (*Id.* at 31.) Petitioners maintain that "[t]here is no principle of law that stands for the notion that a tribunal can only determine jurisdiction once it has adjudicated the merits first," and that it is well established law that jurisdictional questions are separate from the merits. (*Id.* at 28 (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998)).) Petitioners assert that Respondents' reliance on *City of Philadelphia* is misplaced because that non-precedential decision acknowledged that "a party is aggrieved by an improper assertion of jurisdiction over that party because such a decision **does** create a direct, immediate, and substantial interest for that party." (Petitioners' Answer to Respondents' Application at 11 (citing *City of Philadelphia*, slip op. at 6) (emphasis in original).) Petitioners also argue that our Supreme Court has held that "where an agency has proceeded to defend its interpretation of a statute and otherwise indicated that it intends to enforce that statute in a manner detrimental to another government unit, such a position creates an adverse, direct, and immediate impact to the affected government unit." (*Id.* at 12 (citing *Off. of the Governor v. Donahue*, 98 A.3d 1223, 1229-31 (Pa. 2014)).) Petitioners argue that, as reflected in this matter and in *Chester County*, the Board is continuing to exercise jurisdiction over matters involving the discipline and supervision of judicial employees, even where it should not.

Petitioners further contend that because the Board has "the power to make an initial determination as to the nature and extent of its own jurisdiction prior to issuing a complaint," such decision should be made prior to holding a hearing and ruling on the merits. (*Id*. at 29-30 (footnote omitted).) As such, Petitioners argue that the Board erred in not making that determination and denying the motion to dismiss because the factual predicate here was not the same as in *Teamsters Local 115*, i.e., the initial organizing and bargaining stage. (*Id.* at 30-31.) Thus, even if the ultimate result was in Petitioners' favor, Petitioners assert that they did not prevail before the Board because, despite their repeated attempts to contend the Board lacked jurisdiction, the Board nevertheless exercised jurisdiction over the claim, which violated the doctrine of separation of powers. As there is no "de minimis" exception to such violations and the "unconstitutional encroachment into the judiciary's personnel matters is a remediable injury in and of itself," Petitioners assert they have standing to appeal. (*Id.* at 32 (citing *Beckert*, 425 A.2d at 864).)

### C. Respondents' Replies

The Board filed a reply arguing that "the latest permutation of binding and controlling precedent for the Board on th[e] jurisdictional issue involving court-appointed employes is this Court's holding in *Teamsters Local 115* . . . ." (Board's Amended Reply Br. at 1.) The Board contends that this Court, in *Teamsters Local 115,*

> found and held that the interests of the courts, and the administration of justice, were best served by allowing the Board to continue to administer all aspects of PERA with respect to court-appointed employes including entertaining unfair practice charges filed on behalf of court-appointed employes alleging interference, restraint, or coercion under Section 1201(a)(1) and (3) of PERA[, 43 P.S. § 1101.1201(a)(1), (3)].

13

(*Id.* at 1-2.) Additionally, the Board argues that it is aware of the separation of powers when exercising jurisdiction that does not infringe on a court's ability to hire, fire, discipline, or supervise judicial employees. (*Id.* at 2.) Given the appellate review of Board orders "that has existed and been applied consistently for decades," (*id.*), the Board asserts this matter should be dismissed because the charges were dismissed and no remedy was ordered and, therefore, there is no order that injures Petitioners. Further, the Board argues, the request for declaratory relief is not meritorious because it is premised on an issue that requires a case-by-case review of the allegations and facts and the interlocutory order in *Chester County*. (*Id.* at 2-3.)

SEIU replies, stating the unfair labor practice charge was based on Petitioners retaliating against Probation Officer for utilizing the grievance process, not for Petitioners' failure to follow the grievance process as Petitioners argue. (SEIU's Reply Br. at 1.) SEIU argues that the allegations contained in the unfair labor charge are, essentially, the same as those considered by the Court in *Teamsters Local 115* – the violation of a public employee's rights under PERA. (*Id.*) SEIU argues that Petitioners erroneously rely on *Teamsters Local 115* for the proposition that once a collective bargaining agreement is in place, the Board cannot exercise jurisdiction anymore. (*Id.* at 2.) SEIU asserts that "[t]o the contrary, the rights granted to court employees under [PERA] extend well beyond the ratification of a collective bargaining agreement." (*Id.*) SEIU contends the protections afforded under PERA would be illusory "if court employees did not have the right to enforce contracts, internally organize[, and] establish shop structures free from the fear of retaliation." (*Id.*) SEIU also argues that *Beckert* is distinguishable because, there, the issue was the discharge of an employee and a dispute over an internal grievance settlement. (*Id.*) Here, SEIU asserts the dispute is "not concerned with the level of discipline or

14

whether a grievance was properly filed"; rather, SEIU filed the charge to "remedy the discriminatory actions of" Common Pleas. (*Id.*) Judicial employees' "right to engage in collective bargaining will have been eviscerated" if they lose the Board as a forum. (*Id.* at 3.) As such, SEIU requests that this Court dismiss the Petition.

## III. DISCUSSION

### A. *Legal Standards for Summary Relief*

Applications for summary relief are governed by Pennsylvania Rule of Appellate Procedure 1532(b), Pa.R.A.P. 1532(b). It provides that "[a]t any time after the filing of a petition for review in an appellate or original jurisdiction matter, the court may[,] on application[,] enter judgment if the right of the applicant thereto is clear." Pa.R.A.P. 1532(b). Summary relief is reserved for disputes that are legal rather than factual, and we resolve all doubts as to the existence of disputed material fact against the moving party. *Rivera v. Pa. State Police*, 255 A.3d 677, 681 (Pa. Cmwlth. 2021). "An application for summary relief may be granted if a party's right to judgment is clear and no material issues of fact are in dispute." *Leach v. Turzai*, 118 A.3d 1271, 1277 n.5 (Pa. Cmwlth. 2015), *aff'd*, 141 A.3d 426 (Pa. 2016). Respondents seek summary relief as to Petitioners' appellate and original jurisdiction claims.

### B. *Original Jurisdiction Petition for Review*

Respondents argue that declaratory relief is not proper because the determination of whether the Board has jurisdiction over an unfair labor practice charge involving a judicial employee requires a case-by-case determination, which renders the resolution of the issue unsuitable for the broad declaration that Petitioners seek. Petitioners respond that they are asserting a purely legal challenge of the Board's jurisdiction in this matter and are seeking relief from the uncertainty

15

and insecurity of the Board's unlawful exercise of jurisdiction, as reflected both in this matter and *Chester County*. Specifically, Petitioners are requesting that this Court declare that the Board does not have jurisdiction over matters that relate to the hiring, firing, and supervision of judicial employees after the initial bargaining period is over and there is a CBA in place.

### 1. Declaratory Judgment

The purpose of the Declaratory Judgments Act "is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and [it] is to be liberally construed and administered." Section 7541 of the Declaratory Judgments Act, 42 Pa.C.S. § 7541. "Declaratory judgment as to the rights, status or legal relationships is appropriate only where an actual controversy exists." *Eleven Pa., LLC v. State Bd. of Cosmetology*, 169 A.3d 141, 145 (Pa. Cmwlth. 2017) (citing *McCord v. Pennsylvanians for Union Reform*, 136 A.3d 1055 (Pa. Cmwlth. 2016)). "An actual controversy exists when litigation is both imminent and inevitable and the declaration sought will practically help to end the controversy between the parties." *McCord*, 136 A.3d at 1061. It is within this Court's sound discretion to either grant or deny a petition for declaratory relief. *GTECH Corp v. Dep't of Revenue*, 965 A.2d 1276, 1285 (Pa. Cmwlth. 2009). Additionally, where the issue raised in a declaratory judgment action involves the jurisdiction of an executive agency and whether such exercise is constitutional, declaratory judgment is proper notwithstanding the existence of an alternative remedy. *P.J.S. v. State Ethics Comm'n*, 669 A.2d 1105, 1109 (Pa. Cmwlth. 1996).

16

2. Analysis

To prevail on their Application, Respondents must establish that their "right to judgment is clear." *Leach*, 118 A.3d at 1277 n.5. Respondents argue that the Board can assert jurisdiction over the unfair labor practice charge if the unfair practice charge **alleges** that there is interference, coercion, or restraint of organizing and bargaining activity of court employees, which is what Respondents allege occurred here. Petitioners respond that the Board does not have jurisdiction over matters that affect the hire, discharge, and supervision of court employees as that is a matter left to the courts.

"[T]o maintain the independence of the three branches of government, our system embodies a separation of powers," which, under both the United States and Pennsylvania Constitutions, depends on two distinct concepts: "(1) no branch may usurp a function belonging to another and each must operate within its own separate sphere of power; and (2) a system of checks and balances exists, which prevents one branch from acting unchecked." *Jefferson Cnty. Court Appointed Emps. Ass'n v. Pa. Lab. Rels. Bd.*, 985 A.2d 697, 706 (Pa. 2009) (*Jefferson County*) (citing *Loving v. United States*, 517 U.S. 748, 757 (1996)). Allocating the power between the three branches avoids the danger inherent in concentrating the power in one branch, which could be viewed as tyranny. *Id.* at 706-07.

Article V, section 1 of the Pennsylvania Constitution, PA. CONST. art. V, § 1, "vests the judiciary with the power to administer justice." *Jefferson Cnty.*, 985 A.2d at 707. "The judicial branch's right to hire, fire, and supervise employees is derived from that constitutional source." *Id.* (internal quotations omitted). The judiciary's authority over court personnel is essential to the maintenance of an independent

17

judiciary. *Id.* Thus, "[a]nother branch of government [] may not encroach upon this judicial power, although it is not unlimited." *Id.*

"The right of public employees to organize and bargain collectively was conferred by the General Assembly in 1970 with the enactment of PERA." *Pa. Lab. Rels. Bd. v. Am. Fed. of State, Cnty. & Mun. Emps.*, 526 A.2d 769, 772 (Pa. 1987) (*AFSCME*). To effectuate such a right, "a concomitant duty to negotiate and bargain with public employees was imposed on public employers." *Id.* Section 1201(a)(1) of PERA prohibits a public employer from "[i]nterfering, restraining or coercing employes in the exercise of the rights guaranteed in Article IV[, Section 401 of PERA, 43 P.S. § 1101.401,] of this act." 43 P.S. § 1101.1201(a)(1). Among the rights guaranteed in PERA is the right of public employees to "engage in lawful concerted activities for the purpose of collective bargaining or other mutual aid and protection." Section 401 of PERA, 43 P.S. § 1101.401. Additionally, Section 1201(a)(3) and (5) prohibit public employers from, respectively, "[d]iscriminating in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any employe organization," and "[r]efusing to bargain collectively in good faith with an employe representative which is the exclusive representative of employes in an appropriate unit, including but not limited to the discussing of grievances with the exclusive representative." 43 P.S. § 1101.1201(a)(3), (5). The Board is responsible for enforcing PERA.

In 1976, The County Code was amended by the General Assembly "to provide that the county commissioners would be the exclusive representatives of management in collective bargaining with public employees in counties of the third through eighth classes." *AFSCME*, 526 A.2d at 772. Section 1620 of The County Code provides:

18

The salaries and compensation of county officers shall be as now or hereafter fixed by law. The salaries and compensation of all appointed officers and employes who are paid from the county treasury shall be fixed by the salary board created by this act for such purposes: Provided, however, That with respect to representation proceedings before the . . . Board or collective bargaining negotiations involving any or all employes paid from the county treasury, **the board of county commissioners shall have the sole power and responsibility to represent judges of the court of common pleas**, the county and all elected or appointed county officers having any employment powers over the affected employes. **The exercise of such responsibilities by the county commissioners shall in no way affect the hiring, discharging and supervising rights and obligations with respect to such employes as may be vested in the judges or other county officers**.

16 P.S. § 1620 (emphasis added). Our Supreme Court addressed the effect of Section 1620's enactment on the judiciary in a number of decisions, ultimately concluding that judicial employers are public employers, judicial employees have the right to organize and collectively bargain under PERA, and Section 1620 does not violate the separation of powers doctrine because the judiciary retained its ability to hire, fire, and supervise its employees who are within a bargaining unit. *AFSCME*, 526 A.2d at 773-75; *Commonwealth ex rel. Bradley v. Pa. Lab. Rels. Bd.*, 388 A.2d 736, 739-40 (Pa. 1978). This Court and our Supreme Court have vigorously defended against any encroachment by other branches of the government into the judiciary.

In *Russo*, this Court had to decide whether the Whistleblower Law could be constitutionally applied to the judiciary without violating the separation of powers doctrine. In concluding that the law could not be applied to the judiciary, the Court explained that "[o]ur appellate courts have been steadfast in safeguarding the judiciary's right to hire, fire and supervise its own employees and have struck down any legislation that interferes with that authority. 125 A.3d at 121 (citing *Kremer v. State Ethics Comm'n*, 469 A.2d 593, 595-96 (Pa. 1983) (concluding that the State

19

Ethics Commission could not subject judges to financial disclosure requirement because it would interfere with the Supreme Court's authority to supervise judges); *Eshelman v. Comm'rs of the Cnty. of Berks*, 436 A.2d 710, 713 (Pa. Cmwlth. 1981) (concluding that an arbitrator's award pursuant to PERA concerning the hiring, supervision, and discharge of court-appointed employees usurped the exclusive role of the courts over employment decisions)). Thus, the Court concluded that the Whistleblower Law could not constitutionally be applied to the judiciary where it encroaches on the judiciary's right to hire, supervise, and discharge employees. *Russo*, 125 A.3d at 121.

The Court reaffirmed this proposition in *Thomas*. There, the Court, after examining decisions in which laws interfering with the judiciary's right to hire, supervise, and discharge judicial employees, concluded that the Whistleblower Law could **not** be applied to judicial employees without violating separation of powers. The Court explained

> [g]iven the great vigilance and care with which the Supreme Court has protected the independence of the Judiciary and the separation of powers, more than just a general description of a legislative enactment would be necessary to demonstrate the [Supreme] Court's intent to bring the judiciary under the scope of the Whistleblower Law.

*Thomas*, 155 A.3d at 139. The Court further explained that "even though the Supreme Court and the Legislature may both advance similar objectives such as those in *Kremer* and with regard to the protection of those who report wrongdoing, the Court does so **independently** through the promulgation of its own rules, policies, and procedures." *Id.* (emphasis in original). Accordingly, the Court held that the Whistleblower Law could not be constitutionally applied to judicial employees.

In *Renner v. Court of Common Pleas of Lehigh County*, 234 A.3d 411 (Pa. 2020), our Supreme Court examined whether the application of the Pennsylvania Human Relations Act (PHRA)[12] to the judicial branch violated the separation of powers doctrine. After analyzing the extensive history of the Court's jurisprudence involving the application of the PHRA to the judiciary, the Supreme Court concluded that it **cannot** be constitutionally applied to the judiciary. In so concluding, the Court explained

> the Pennsylvania Constitution grants independence to the judiciary in its administration of the Unified Judicial System. . . . Additionally, the Constitution grants exclusive policy and rule-making power to the judiciary regarding the courts. . . . The constitutional power to administer justice and to promulgate employment policies and rules includes the judiciary's power to select, discharge, and supervise its employees. . . . This being the case, as a co-equal and independent branch of government, **the judiciary has the independent and exclusive constitutional right to enact employment policies and rules regarding its employees, and to supervise the employment of such individuals**.

*Id.* at 425 (emphasis added) (internal citations omitted). The Court went on to state

> that application of the PHRA, no matter how admirable its goals, to judiciary personnel is in direct conflict with the judiciary's constitutionally[ ]granted exclusive and independent right to administer the courts and to promulgate rules and polices regarding judicial employees, as well as its exclusive and independent authority to select, discharge, and supervise its employees.

*Id.* Accordingly, "it is the Court, and only the Court, that provides protection for employees subject to discrimination, independent of the executive and legislative branches, through its own rules, policies, and procedures." *Id.* at 426.

---

[12] 43 P.S. §§ 951-963.

Against this backdrop, we decide the issue here: whether the Board can exercise jurisdiction over an unfair labor practice charge where it involves the discipline of a judicial employee. In support of their positions, Respondents cite *Teamsters Local 115* and Petitioners cite *Beckert*. After careful review of the cases and the separation of powers jurisprudence, the Court finds *Beckert* more in line with how similar cases have been decided.

In *Beckert*, this Court addressed whether the Board had jurisdiction over an unfair labor practice charge brought by a judicial employee based on the employee's discharge. There, the union entered into a memorandum of understanding (MOU) with the county commissioners and the judges of the court of common pleas. Contained therein was article XVII, which provided a three-step procedure to resolve grievances or disputes between the parties, with the first step being with the employee's supervisor, the second step being an appeal to the court administrator, and the third step an appeal to the president judge. Under article XVII, an employee could not be "demoted, suspended, discharged or disciplined without just cause," and it provided that an employee could appeal any such action at "Step Two" of the grievance procedure. *Beckert*, 425 A.2d at 860. After the MOU was in place, a clerk of a district justice was discharged and commenced the grievance process at step two. "[A]n accord was reached between the [c]ourt [a]dministrator and the union, and[,] as a result[,] the employee was to be reinstated." *Id.* The district justice appealed the matter to the president judge pursuant to step three, and two common pleas judges acting as designees of the president judge upheld the discharge. As a result of the clerk's discharge, the union filed an unfair labor practice claim, alleging violations of Section 1201(a)(1) and (5) of PERA. The Board acted on the union's allegations by issuing a complaint and notice of hearing. The president judge filed

a petition for review with this Court seeking to enjoin the Board from exercising jurisdiction based on the contention that, because the discharge of a judicial employee is within the province of the courts, the Board lacked jurisdiction to review the discharge.

This Court agreed that the discharge of judicial employees was within the sole province of the judiciary and could not be encroached upon by the Board. In so concluding, this Court recognized that "[b]ecause the power to select judicial assistants is an inherent corollary of the judicial power itself, the power to supervise or discharge such personnel must flow essentially from that same source," and "the selection or hiring of judicial assistants is an exercise of judicial power; and so is their discharge." *Id.* at 862. Thus, the Court concluded that the Board could not exercise jurisdiction over the discharge of a judicial employee as the employee's discharge was "a judicial power vested by our Constitution in the courts." *Id.* Further, this Court explained, "[t]he matter in controversy between the [judicial employer] and the union, and referred to the Board, is the judicial discharge of a judicial employee. That is the reality of the matter despite efforts by the union to color it an 'unfair labor practice.'" *Id.* at 864. The Court further explained that

> a court of common pleas could in the exercise of its constitutional power provide for a grievance or hearing procedure prior to the discharge of a judicial employee. Such a procedure could be created by the court's own initiative or be the result of an agreement with a representative of the employees. However, discharge decisions under such a procedure would have to remain finally with the court. For some non-judicial branch of government to be given the power to review such decisions would represent an encroachment on the judiciary's control of hiring and discharging court employees. **An agreement establishing grievance and hearing procedures may be the source of rights entitled to legal protection** by an action of law or equity. But such an agreement **cannot be deemed to transfer to some other**

23

**branch of government a court's constitutional power over the hiring and discharge of court employees.**"

*Id.* at 863 (emphasis added).

The Court recognized that "PERA grants to judicial employees the right to organize and to bargain collectively with county commissioners, or other management representatives of the courts, concerning the financial terms of employment," but also acknowledged that "PERA cannot constitutionally be interpreted as immunizing such employees from the inherent judicial power of discharge." *Id.* at 863. Thus, the Court enjoined the Board from exercising jurisdiction over the clerk's discharge noting that this "is not to say that an employee can be discharged for exercising a right conferred by statute or constitutionally protected without raising due process considerations." *Id.* at 863 n.9.

In contrast to *Beckert*, the court in *Teamsters Local 115* concluded that the Board did have jurisdiction over an unfair labor practice charge. There, a union started an organizational drive among court employees, which garnered positive response from various employee groups, including court criers, court officers, and judicial aides. After the organizational drive started, however, the court was advised that these positions would not appear in the following year's budget and would, instead, be replaced by the position of tipstaff. The result of this change was the elimination of employees occupying these former positions, although some were rehired as tipstaff. In addition, within a week of the organizing drive, 100 custodial positions were eliminated based on the judicial employer's decision to privatize. Because of the judicial employer's actions, the union filed an unfair labor practice charge alleging that the reclassification of the judicial employees and privatization of the custodial positions was motivated by anti-union animus and to prevent unionization in violation of Section 1201(a)(1) and (3) of PERA. The Board refused

24

to issue a complaint, citing *Beckert*, concluding that the doctrine of separation of powers prevented it from exercising jurisdiction over the charges where the judicial branch was the respondent.

On appeal, the union argued there was no separation of powers violation under these circumstances. In concluding the Board had jurisdiction, this Court distinguished *Beckert*, explaining that, in that case, the "judges . . . had already entered into a voluntary [CBA] or '[MOU],'" the terms of which provided that the president judge's decision was final and not subject to arbitration. *Teamsters Local 115*, 619 A.2d at 386 (emphasis omitted). Thus, the Court concluded "*Beckert* stands for the proposition that the ultimate resolution of a dispute over a [CBA] **which already exists** cannot rest with the executive or legislative branches of government where the issue concerns the authority to select, discharge, or supervise court personnel," which distinguished it from the situation in *Teamsters Local 115*. *Id.* at 387 (emphasis in original).

Turning to the matter specifically before it, the Court in *Teamsters Local 115* recognized that the judiciary was allegedly refusing to allow its employees to organize for the purpose of bargaining. Thus, the issue before the Court was: "Does the Board possess jurisdiction to hear an unfair labor practice charge alleging that individual employees were fired as a result of the exercise of their right to organize granted by [PERA]?" *Id.* at 387. In concluding that the Board had jurisdiction, the Court explained that the issue in that case was "the competing rights of the courts to supervise their employees and the correlative right of all public employees in Pennsylvania, including judicial employees, to organize." *Id.* at 388. The Court stated that "[t]he courts have the inherent right to hire, fire and discharge court employees and such right does not admit of any impingement on the part of the

25

executive or legislative branches," but its "employees possess the right to organize and bargain collectively, and the vindication of their rights is left to, in the first instance, the executive branch of government in the form of the Board." *Id.* As such, the Court concluded that the employees must be given a forum to vindicate their rights to organize and collectively bargain, the interference with which is an unfair labor practice, and the Board's exercise of jurisdiction in this case did not violate the separation of powers doctrine. The Court reasoned that it reached this conclusion "because the Board is the only forum which can entertain unfair labor practice charges, failure of the Board to accept jurisdiction in the instant case would eviscerate the rights of court employees under [PERA]." *Id.*

Unlike the situation in *Teamsters Local 115*, this case does not involve the organizing of employees. Rather, like in *Beckert*, the discipline of a judicial employee is at issue. "[T]he reality of the matter despite efforts by the union to color it an 'unfair labor practice'" is the judicial discipline of a court employee. *Beckert*, 425 A.2d at 864. The CBA here involves a two-step process for court employees to present their grievances. The first step is with the immediate supervisor and then, should the employees not be satisfied, they can proceed to step two and request a review with the District Court Administrator. (*See* Board Answer, Appendix B.) A judicial employee is not without recourse should said employee take issue with adverse employment decisions. Here, Probation Officer completed only step one of the grievance procedure, and never sought review of that decision by the District Court Administrator. The agreement "between the union and the other parties **cannot validly give a court employee a right to have his [suspension] reviewed by a non-judicial branch of** government[.]" *Beckert*, 425 A.2d at 864. Thus, based on a review of the separation of powers jurisprudence and given "the great vigilance

26

and care with which the Supreme Court has protected the independence of the [j]udiciary and the separation of powers," *Thomas*, 155 A.3d at 139, we conclude that Respondents have not established the clear right to relief needed to prevail on their Application and, as a result, their Application as to the original jurisdiction claim is denied.

### C. Appellate Petition for Review

We next consider Respondents' assertion that they are entitled to summary relief, and dismissal of Petitioners' appeal, because Petitioners were not aggrieved by and, therefore, lack standing to appeal, the Final Order. Petitioners argue that they have standing because they consistently challenged the Board's authority to exercise jurisdiction, a challenge upon which they were unsuccessful. The very fact that the Board reviewed the merits of the unfair labor practice charge based on the discipline of a judicial employee, Petitioners' assert, infringes on their constitutional authority and causes the aggrievement needed to appeal.

Pursuant to Section 702 of the Administrative Agency Law, "[a]ny person **aggrieved** by an adjudication of a Commonwealth agency who has a direct interest in such adjudication shall have the right to appeal therefrom. . . ." 2 Pa.C.S. § 702 (emphasis added). In addition, Pennsylvania Rule of Appellate Procedure 501 provides: "[e]xcept where the right of appeal is enlarged by statute, any party who is **aggrieved** by an appealable order . . . may appeal therefrom." Pa.R.A.P. 501 (emphasis added). Thus, the common theme is that only a person that is "aggrieved" by a decision has standing to challenge the tribunal's order. *See ACS Enters., Inc. v. Norristown Borough Zoning Hearing Bd.*, 659 A.2d 651, 653 (Pa. Cmwlth. 1995). Although the Administrative Agency Law and Appellate Rules do not define "aggrieved," case law has established that a party is "aggrieved" if said party

27

"(a) ha[s] a substantial interest in the subject[ ]matter of the litigation; (b) the interest [is] direct; and (c) the interest [is] immediate and not a remote consequence." *Beers v. Unemployment Comp. Bd. of Rev.*, 633 A.2d 1158, 1161 (Pa. 1993). Additionally, a party is "aggrieved" when "the party has been adversely affected by the decision from which the appeal is taken." *In re J.G.*, 984 A.2d 541, 546 (Pa. Super. 2009).[13] Generally, a party who prevailed in a proceeding is not an aggrieved party and, therefore, has no standing to appeal. *United Parcel Serv., Inc. v. Pa. Pub. Util. Comm'n*, 830 A.2d 941 (Pa. 2003). "A prevailing party that disagrees with the legal reasoning of an order o[f] a court or agency or may have had a particular issue decided against it lacks standing to appeal because it is not adversely affected by the order." *Maple Street A.M.E. Zion Church v. City of Williamsport*, 7 A.3d 319, 322-23 (Pa. Cmwlth. 2010).

In examining whether Petitioners are aggrieved by an alleged improper assertion of jurisdiction, *Penn Township v. Penn Township Police Association* (Pa. Cmwlth., No. 905 C.D. 2007, filed May 13, 2008), and *Donahue* are instructive.

In *Penn Township*, which involved a grievance arbitration, we explained that a party is aggrieved by an improper assertion of jurisdiction because such a decision creates a direct, immediate, and substantial interest for that party. *Penn Twp.*, slip op. at 7.[14] Because the arbitration in *Penn Township* was bifurcated, we explained the arbitrator's jurisdictional decision could not be appealed before the merits were decided. In finding sufficient aggrievement to support standing to file an appeal, we

---

[13] While not binding on this Court, opinions of the Superior Court may be cited for their persuasive value. *Lerch v. Unemployment Comp. Bd. of Rev.*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

[14] The Court in *City of Philadelphia* also cited *Penn Township* for this proposition but ultimately found the petitioner there was not aggrieved because the petitioner challenged a statement in the Board's opinion, which was dicta, and "[d]isagreement with dicta does not render a prevailing party aggrieved." *City of Philadelphia*, slip op. at 6-8 (citation and emphasis omitted).

28

stated that "[o]ur review here is of the decision on jurisdiction, and not on the merits; therefore[,] [the t]ownship had a direct, immediate, and substantial interest in the jurisdictional determination." *Id.* Additionally, our Supreme Court in *Donahue* explained that where an agency has proceeded to defend its interpretation of a statute and otherwise indicated that it intends to enforce that statute in a manner detrimental to another government unit, such a position creates an adverse, direct, and immediate impact to the affected governmental unit. 98 A.3d at 1229-31.

That this was not a bifurcated proceeding as in *Penn Township* does not diminish that the Board assumed and exercised jurisdiction over the merits of the complaint, over Common Pleas' objections. Common Pleas could not have appealed that assumption of jurisdiction until after the Board issued its Final Order. If Common Pleas is ultimately correct that the Board should not have exercised jurisdiction over the merits of the alleged unfair labor practice here and to do so violated Common Pleas' constitutional rights, Common Pleas would be aggrieved by the Final Order. Moreover, Common Pleas is asserting that the Board is consistently interpreting PERA in a manner that is detrimental to the judiciary, as exemplified by this matter and *Chester County*, thus ignoring the constitutional separation of powers. If Common Pleas is correct, this, too, could give rise to an adverse, direct, and immediate impact on Common Pleas such that it would be aggrieved by the Final Order. *Donahue*, 98 A.3d at 1229-31.

Additional guidance can be found in *Beckert*, where this Court explained that "Pennsylvania courts may enjoin an administrative agency from exercising powers forbidden to it by the Constitution." 425 A.2d at 864. There, the Court rejected the argument advanced by the union "that the constitutional issue of this case must be first submitted to the Board as the exclusive tribunal of primary resort." *Id.* The

Court further explained that "it would be incongruous to conclude that the constitutional question itself should be passed on by the Board in the first instance. The power of the courts to decide all constitutional questions is traditional and inherent." *Id.* (citing *Stander v. Kelley*, 250 A.2d 474, 478 (Pa. 1969)). If a court can enjoin the exercise of jurisdiction and preclude the agency from passing on the constitutional question, it would seem equally incongruous to say that the exercise of such forbidden powers, particularly over objection, would not create an injury sufficient to support Petitioners' standing to appeal as an aggrieved party. Thus, Petitioners could be "adversely affected by the decision from which the appeal is taken," *In re J.G.*, 984 A.2d at 546, because the Board exercising jurisdiction may encroach on the judiciary's right to hire, fire, or supervise judicial employees. Thus, Respondents have not established a clear right to dismissal of the appellate portion of the Petition based on Petitioners' lack of aggrievement.

Accordingly, Respondents have not established the clear right to relief needed to prevail on their Application and, as a result, their Application as to the appellate claim is denied.

## IV. CONCLUSION

For the foregoing reasons, Respondents are not entitled to summary relief and, therefore, their Application is denied. However, reviewing the Petition and Petitioners' requested relief, it is apparent that Petitioners are seeking a determination of their rights as to all cases involving the discipline of a judicial employee, instead of one particular case. Thus, this question, at this time, appears to be better suited for consideration as a declaratory judgment action in this Court's original jurisdiction instead of in the Court's appellate jurisdiction. Accordingly,

30

the appellate portion of the Petition is stayed pending the resolution of Petitioners'
declaratory judgment claim in this Court's original jurisdiction.

_____
**RENÉE COHN JUBELIRER,** President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

The Honorable Maria Musti Cook,   :
in her official capacity as the   :
President Judge of the Court of   :
Common Pleas of York County,   :
Nineteenth Judicial District; and   :
The Court of Common Pleas of   :
York County,   :
                Petitioners   :
  :
          v.   :   No. 161 M.D. 2021
  :
The Pennsylvania Labor Relations   :
Board; and SEIU Local 668 PSSU,   :
            Respondents   :

# **O R D E R**

**NOW**, November 2, 2022, the Application for Summary Relief filed by the Pennsylvania Labor Relations Board and Service Employees International Union, Local 668, Pennsylvania Social Services Union is **DENIED**. The Appellate Petition for Review is hereby **STAYED** pending disposition of the original jurisdiction declaratory judgment action.

_____
**RENÉE COHN JUBELIRER,** President Judge